[No. S044279. Apr. 8, 1996.]

AMERICAN AIRLINES, INC., et al., Plaintiffs and Appellants, v. COUNTY OF SAN MATEO, Defendant and Respondent.

1112

## COUNSEL

Crosby, Heafey, Roach & May, Peter W. Davis, Jay R. Martin, John E. Carne, Kathy M. Banke, Kimberly S. Stanley, Goodwin, Procter & Hoar, John C. Englander, J. Anthony Downs and A. Lauren Carpenter for Plaintiffs and Appellants.

Thomas F. Casey III, County Counsel (San Mateo), Mary K. Raftery, Deputy County Counsel, De Witt W. Clinton, County Counsel (Los Angeles), Albert Ramseyer, Deputy County Counsel, Kelvin H. Booty, County Counsel (Alameda), James May, Assistant County Counsel, Richard Karlsson, Deputy County Counsel, L. B. Elam and Robert A. Ryan, Jr., County Counsel (Sacramento), John Seyman and Steve Kaiser, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**ARABIAN, J.*—**Here we determine whether California's ad valorem tax system is subject to challenge under former 49 United States Code Appendix section 1513(d) (former section 1513(d)),[1] of the Airport and Airway Improvement Act of 1982. In particular, we consider whether the plaintiff airlines have a private right of action under former section 1513(d), and whether the airlines have stated a claim for relief under either that section or 42 United States Code section 1983. The case involves 10 commercial airlines and 18 counties. The issues are of first impression, and involve solely the interpretation of federal law.

We conclude that the airlines do have a private right of action under former section 1513(d). In considering whether the airlines have stated a claim for relief under that statute, we note that the airlines assert *two* bases on which they claim former section 1513(d) has been violated. We conclude that they have stated a claim for relief under former section 1513(d) on the first basis by alleging unequal enforcement of California's facially neutral tax laws. We further conclude, however, that the airlines have failed to state a claim for relief under former section 1513(d) on the second basis, that is, by alleging that the assessment ratio for railroad personal property is lower than that for airline personal property. Finally, we conclude that the 42 United States Code section 1983 claim is not properly before us. We therefore reverse the judgment of the Court of Appeal.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1]This section is now codified in substantially the same form at 49 United States Code section 40116(d). Former section 1513(d), to which the parties refer, was in effect during the tax years at issue (1985-1989).

## I. Facts and Procedural Background

Ten commercial airlines[2] (Airlines) brought separate actions against eighteen counties[3] (Counties) seeking a partial refund of and declaratory judgment regarding ad valorem personal property taxes. They alleged in each action that the Counties collected the taxes in violation of former section 1513(d)[4] of the Airport and Airway Improvement Act of 1982 (AAIA). The actions were coordinated in San Mateo County.

The Counties asserted below that the purpose of their motion for summary judgment was to determine whether the Airlines had stated a cause of action. ■ "A defendant's motion for summary judgment necessarily includes a test of the sufficiency of the complaint. (*Centinela Hospital Assn.* v. *City of*

---

[2]The airlines are Alaska Airlines, Inc.; American Airlines, Inc.; Continental Airlines, Inc.; Delta Air Lines, Inc.; Federal Express Corporation; Northwest Airlines, Inc.; Trans World Airlines, Inc.; United Airlines, Inc.; United Parcel Service; and USAir, Inc.

[3]The counties are Alameda, Contra Costa, El Dorado, Fresno, Humboldt, Kern, Los Angeles, Monterey, Orange, Riverside, Sacramento, San Bernardino, San Diego, San Joaquin, San Mateo, Santa Barbara, Santa Clara, and Solano.

[4]During the tax years in question, former section 1513(d) provided:

"(d) Acts which unreasonably burden and discriminate against interstate commerce; definitions.

(1) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

"(A) assess air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

"(B) levy or collect a tax on an assessment that may not be made under subparagraph (A) of this paragraph; or

"(C) levy or collect an ad valorem property tax on air carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

"(2) In this subsection—

"(A) 'Assessment' means valuation for a property tax levied by a taxing district;

"(B) 'assessment jurisdiction' means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

"(C) 'air carrier transportation property' means property, as defined by the Civil Aeronautics Board, owned or used by an air carrier providing air transportation;

"(D) 'commercial and industrial property' means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy; and

"(E) 'State' shall include the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States, and political agencies of two or more States.

"(3) This subsection shall not apply to any in lieu tax which is wholly utilized for airport and aeronautical purposes."

*Inglewood* (1990) 225 Cal.App.3d 1586, 1595 [275 Cal.Rptr. 901].) When a motion for summary judgment is used to test whether the complaint states a cause of action, the court will apply the rule applicable to demurrers and accept the allegations of the complaint as true. (*Miller* v. *Glass* (1955) 44 Cal.2d 359, 360 [282 P.2d 501].)" (*Valdez* v. *City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1055 [282 Cal.Rptr. 726].) Because the time for a demurrer had passed by the time the Counties' motion was filed, we treat the motion as a motion for judgment on the pleadings. (*People* v. *$20,000 U.S. Currency* (1991) 235 Cal.App.3d 682, 691 [286 Cal.Rptr. 746].)

"Accordingly, for purposes of this opinion, we treat the properly pleaded allegations of [the Airlines'] complaint as true, and also consider those matters subject to judicial notice. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 714-715, fn. 3 [117 Cal.Rptr. 241, 527 P.2d 865]; *Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432, 440 [275 Cal.Rptr. 113]; *April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 815 [195 Cal.Rptr. 421].) 'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties.' (*Guild Mortgage Co.* v. *Heller* (1987) 193 Cal.App.3d 1505, 1508 [239 Cal.Rptr. 59].) 'Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory.' (*Ibid.*)" (*Alliance Mortgage Co.* v. *Rothwell* (1995) 10 Cal.4th 1226, 1232 [44 Cal.Rptr.2d 352, 900 P.2d 601].)

The Airlines' second amended complaint against Los Angeles County is representative of their refund causes of action. It alleges, in pertinent part:

"This action is brought pursuant to the applicable provisions of the California Revenue and Taxation Code and other related provisions of state and federal law to obtain refunds of taxes which were paid by [the Airlines] to [Los Angeles County] . . . and which were illegally and erroneously collected from [the Airlines] in violation of [former] 49 U.S.C. Section 1513 for the 1985, 1986, 1987, 1988 and 1989 tax years. . . .

"Pursuant to California law and practice, all commercial and industrial property, other than air carrier transportation property, is assessed at amounts substantially below true market value of that property.

"All of [the Airlines'] property used in interstate air transportation in the County of Los Angeles is assessed each year at amounts equal to or in

excess of the true market value of said property.[5] Plaintiffs are taxed based on these assessments, and have paid taxes pursuant to said assessments.

"This disparity in tax treatment causes [the Airlines'] property to be assessed at a value bearing a higher ratio to its true market value than the ratio that the assessed value of other commercial and industrial property in the county has to its true market value in violation of [former] 49 U.S.C. Section 1513.

"This discrimination is not less than forty-seven percent (47%) of the *ad valorem* property taxes paid to this county for the 1985 [through 1989] tax year[s].

"[The Airlines] are therefore entitled to a refund of at least forty-seven percent (47%) of the *ad valorem* property taxes paid to this county for the 1985 [through 1989] tax year[s].

"This disparity also imposes an unreasonable burden on and discriminates against interstate commerce in violation of Article I, Section 8 of the United States Constitution violating the supremacy clause of the U.S. Constitution, Article VI, and denies plaintiffs due process and equal protection of the law in violation of U.S. Constitution, Amendment XIV, Section 1."[6]

The Counties filed a motion for summary judgment "on the grounds that there is no triable issue of material fact as to [the Counties] because [the Airlines] have failed to state a cause of action under [former] 49 U.S.C. section 1513(d), the Commerce Clause (U.S. Const., Art. I, § 8), the Supremacy Clause (U.S. Const., Art. VI), or the Fourteenth Amendment (U.S.

---

[5]The Airlines conceded for the purposes of the Counties' motion that their property was not assessed at more than 100 percent of its fair market value.

[6]These federal constitutional claims were not raised by either party in this court and are therefore not before us. Likewise, the Airlines argued in the trial court that they had a viable discrimination cause of action because "[c]ertain key classifications of commercial and industrial personal property are exempt from property taxation altogether." The United States Supreme Court subsequently rejected a similar argument under analogous provisions of the Railroad Revitalization and Regulatory Reform Act of 1976, former 49 United States Code section 11503. (*Department of Revenue of Ore.* v. *ACF Industries, Inc.* (1994) 510 U.S. 332, 343 [127 L.Ed.2d 165, 175, 114 S.Ct. 843, 849].) Accordingly, the Airlines have abandoned this claim on appeal. In addition, the Airlines sought declaratory relief "as to whether the *ad valorem* property taxes which they paid . . . for the 1985, 1986, 1987, and 1988 and 1989 tax years were lawfully assessed and collected." The trial court granted the Counties' motion for summary adjudication as to this cause of action. The Airlines have not pursued this claim in this court. Finally, the issue of whether the Airlines' claims are subject to a statute of limitations defense is not before us, and we express no opinion on it.

Const., Amend. XIV, § 1)." The Counties also argued that the Airlines lacked a private right of action under former section 1513(d).[7]

The trial court granted the Counties' motion on the following grounds: "1. Based on the current assessment and taxing systems of airline property in California, the [Airlines] cannot, as a matter of law, state a cause of action under [former] 49 U.S.C. Section [1513]. ¶ 2. The [Airlines] must show a prima[ ]facie case of discrimination which they have not, and cannot do factually. ¶ 3. There is no private right of action under [former] 49 U.S.C. section [1513(d)]."

The Court of Appeal affirmed and denied the Airlines' petition for rehearing. We granted the Airlines' petition for review.

## II. DISCUSSION

### A. *Background*

#### 1. *Former Section 1513(d)*

Pursuant to its plenary commerce clause power, Congress has enacted three statutory schemes that prohibit tax discrimination against interstate carriers, the Railroad Revitalization and Regulatory Reform Act of 1976, former 49 United States Code section 11503[8] (4-R Act), the Motor Carrier

---

[7]In addition, the Counties moved for summary adjudication as to certain causes of action on the ground that the Airlines failed to exhaust their state administrative remedies prior to filing their refund actions. The trial court denied this motion. Therefore, the exhaustion issue as to the refund claims was not addressed by the Court of Appeal and is not before this court.

[8]This section is now codified in substantially the same form at 49 United States Code section 11501. Former section 11503, to which the parties refer, was in effect during the tax years at issue. During this period, it provided:

"(a) In this section—

"(1) 'assessment' means valuation for a property tax levied by a taxing district.

"(2) 'assessment jurisdiction' means a geographical area in a State used in determining the assessed value of property for ad valorem taxation.

"(3) 'rail transportation property' means property, as defined by the Interstate Commerce Commission, owned or used by a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.

"(4) 'commercial and industrial property' means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

"(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

"(1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other

Act of 1980, former 49 United States Code section 11503a[9] (Motor Carrier

commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

"(2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

"(3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

"(4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.

"(c) Notwithstanding section 1341 of title 28 [the Tax Injunction Act] and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

"(1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

"(2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district."

[9]This section is now codified in substantially the same form at 49 United States Code section 14502. Former 49 United States Code section 11503a, to which the parties refer, was in effect during the tax years at issue. During this time, it provided:

"(a) In this section—

"(1) 'assessment' means valuation for a property tax levied by a taxing district;

"(2) 'assessment jurisdiction' means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

"(3) 'motor carrier transportation property' means property, as defined by the Interstate Commerce Commission, owned or used by a motor carrier providing transportation in interstate commerce whether or not such transportation is subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title; and

"(4) 'commercial and industrial property' means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

"(b) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

"(1) assess motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the ratio that the assessed value

Act), and the AAIA.[10] "Congress developed most of the legislative history of these statutes during the fifteen years prior to the statutes' enactment. The bulk of the legislative history relates to tax discrimination against the railroad industry; legislative history concerning the motor and air carrier statutes is minimal." (Note, *Discriminatory Demands and Divided Decisions: State and Local Taxation of Rail, Motor, and Air Carrier Property* (1986) 39 Vand. L.Rev. 1107, 1109, fns. omitted (hereafter *Discriminatory Demands*).)

The pertinent parts of the AAIA, the 4-R Act, and the Motor Carrier Act are strikingly similar. The *differences* between the statutes are highlighted as

---

of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

"(2) levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection;

"(3) levy or collect an ad valorem property tax on motor carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

"(c) Notwithstanding section 1341 of title 28 [the Tax Injunction Act] and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of motor carrier transportation property exceeds by at least 5 percent, the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

"(1) an assessment of the motor carrier transportation property at a value that has a higher ratio to the true market value of the motor carrier transportation property than the assessment value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all such other property; and

"(2) the collection of ad valorem property tax on the motor carrier transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district."

[10]In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act (TEFRA), a comprehensive bill which included the AAIA, and added former section 1513(d) to the Airport Development Acceleration Act of 1973. (*Western Air Lines* v. *Board of Equalization* (1987) 480 U.S. 123, 125 [94 L.Ed.2d 112, 116-117, 107 S.Ct. 1038]; *State Bd. of Equal.* v. *American Airlines, Inc.* (Colo. 1989) 773 P.2d 1033, 1034-1035, fn. 1.) The legislative history of former section 1513(d) is limited, simply stating "This section provides that States may not tax at a level which unreasonably burdens or discriminates against interstate commerce. The provision makes current law which prohibits the assessment, levying or collecting of taxes on motor carrier property in a manner different from that of other commercial and industrial property, applicable to air carriers." (Sen.Rep. No. 97-494, 2d Sess., p. 37 (1982), reprinted in 1982 U.S. Code Cong. & Admin. News at pp. 781, 1188, 1484.)

follows. Former section 1513(d)(1)(A), the portion of former section 1513(d) at issue in this case, provides that a state shall not: "assess *air carrier* transportation property at a value that has a higher ratio to the true market value of the *air carrier* transportation property than the ratio that the assessed value of other commercial and industrial property *of the same type* in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." (Italics added.) Former section 11503(b)(1) of the 4-R Act provides that a state shall not: "assess *rail* transportation property at a value that has a higher ratio to the true market value of the *rail* transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." (Italics added.) Finally, former section 11503a(b)(1), of the Motor Carrier Act provides that a state shall not: "assess *motor carrier* transportation property at a value that has a higher ratio to the true market value of the *motor carrier* transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." (Italics added.) For all three acts, the term "'commercial and industrial property'" is defined as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy." (Former 49 U.S.C. Appen. § 1513(d)(2)(D); former 49 U.S.C. § 11503(a)(4); former 49 U.S.C. § 11503a(a)(4).)

■ Given the strong similarity in statutory language and purpose between the three acts, cases interpreting one act are often relied on to interpret a different act. Moreover, because of this similarity, and the express reference in the legislative history of former section 1513(d) to the Motor Carrier Act (see *ante*, fn. 10) the legislative history of the 4-R and the Motor Carrier Acts is, as the parties agree, appropriately used to interpret former section 1513(d). (*Western Air Lines* v. *Board of Equalization, supra*, 480 U.S. at p. 131 [94 L.Ed.2d at pp. 120-121] [relying on legislative history of 4-R Act in interpreting former § 1513(d)]; *Arkansas-Best Freight System, Inc.* v. *Lynch* (4th Cir. 1983) 723 F.2d 365, 366, fn. 3 ["the parties' reliance upon . . . the legislative history of the 4-R Act [in construing Motor Carrier Act] is correct"]; Sen.Rep. No. 97-494, 2d Sess., p. 37, *supra*, reprinted in 1982 U.S. Code Cong. & Admin. News, at pp. 781, 1188, 1484 [§ 1513(d) extends to air carriers same protections given to motor carriers].) In *Western Air Lines* v. *Board of Equalization, supra*, 480 U.S. at page 131, a case construing former section 1513(d), the high court examined the purpose behind the

three acts, stating: "The legislative history of the antidiscrimination provision in the 4-R Act demonstrates Congress' awareness that interstate carriers 'are easy prey for State and local assessors' in that they are 'nonvoting, often nonresident, targets for local taxation,' who cannot easily remove themselves from the locality . . . . It is this temptation to excessively tax nonvoting, nonresident businesses in order to subsidize general welfare services for state residents that made federal legislation in this area necessary."

In general, under the Tax Injunction Act[11] federal courts may not enjoin the collection of state taxes. The 4-R and the Motor Carrier Acts, however, contain an express exemption from the Tax Injunction Act, according federal district and state courts concurrent jurisdiction over claims within their purview. (Former 49 U.S.C. §§ 11503(c), 11503a(c).) Unlike the 4-R and Motor Carrier Acts, former section 1513(d) does not include an express exemption to the Tax Injunction Act.

### 2. *California Tax System*

California imposes an ad valorem tax upon all personal property within its jurisdiction, except property granted an express exemption. (Rev. & Tax. Code, § 201.) ■ An ad valorem tax is a tax levied on property in proportion to its value, as determined by assessment or appraisal. (Rev. & Tax. Code, § 2202 [" 'Ad valorem property taxation' means any source of revenue derived from applying a property tax rate to the assessed value of property"]; Black's Law Dict. (6th ed. 1990) p. 51.) "The 'assessed value' of property is the amount to which the tax rate is applied in order to compute the tax." (Amdur, *Telecommunications Property Taxation* (1994) 46 Fed. Comm. L.J. 219, 262.) The comparison of the assessed value to the full market value is called the " 'assessment ratio.' " (*Ibid.*) "Adjustment of assessment levels of various categories of property to a uniform percentage of full value is called 'equalization.' " (*Ibid.*; *State Bd. of Equal.* v. *American Airlines, Inc., supra,* 773 P.2d at p. 1042.)

■ In California, property taxes on certificated aircraft having a tax situs in multiple jurisdictions are allocated according to a prescribed formula. (Rev. & Tax. Code, §§ 1150-1156; *American Airlines, Inc.* v. *County of San Diego* (1990) 220 Cal.App.3d 164, 167-168 [269 Cal.Rptr. 372]; *County of Alameda* v. *State Bd. of Equalization* (1982) 131 Cal.App.3d 374, 379 [182

---

[11]The Tax Injunction Act provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." (28 U.S.C. § 1341.)

Cal.Rptr. 450].) This formula enables county assessors to determine "the amount of aircraft presence within the state during the taxable year, i.e., the 'time in state' factor." (*County of Alameda* v. *State Bd. of Equalization, supra,* 131 Cal.App.3d at pp. 379-380.) Once this apportionment is determined, it is taxed in the same manner as all locally assessed personal property in California; that is, it is annually assessed at 100 percent of fair market value, and taxed at the rate of 1 percent. (Cal. Const., art. XIII, §§ 2, 12; Rev. & Tax. Code, §§ 106, 110.5, 135, subd. (a), 401; 1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1988) § 9:06, p. 6.) "In local assessments, the valuation of the property is ordinarily made by the summation method, under which each component of the property in the taxing jurisdiction is valued separately and then these amounts are added together." (Amdur, *Telecommunications Property Taxation, supra,* 46 Fed. Comm. L.J. at p. 222.)

In contrast, under the California Constitution, railroad property, as a utility, has for decades been centrally assessed by the State Board of Equalization under a unitary standard. (Cal. Const., art. XIII, § 19; Rev. & Tax. Code, § 721 et seq.; see *ITT World Communications, Inc.* v. *City and County of San Francisco* (1985) 37 Cal.3d 859, 866 [210 Cal.Rptr. 226, 693 P.2d 811].) "[U]nit taxation is properly characterized not as the taxation of real property or personal property or even a combination of both, but rather as the taxation of property *as a going concern.*" (*ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at p. 864, italics in original; 2 Ehrman & Flavin, Taxing Cal. Property, *supra,* § 17:07, p. 20; see Rev. & Tax. Code §§ 723, 723.1 ["In the case of regulated railway companies, there shall be only two classifications of property for purposes of this code, unitary and nonunitary."].) "The essence of the unitary valuation concept is the determination of the value of an enterprise as a whole without regard to the value of the individual assets making up the enterprise." (Bertane, *The Assessment of Public Utility Property in California* (1973) 20 UCLA L.Rev. 419, 426.) The value of such property "depends on the interrelation and operation of the entire utility as a unit. Many of the separate assets would be practically valueless without the rest of the system. Ten miles of telephone wire or one specially designed turbine [or ten miles of track] would have a questionable value, other than as scrap, without the benefit of the rest of the system as a whole." (*Id.* at p. 433; *ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at p. 863.) "Unit taxation prevents real but intangible value from escaping assessment and taxation by treating public utility property as a whole, undifferentiated into separate assets (land, buildings, vehicles, etc.) or even separate kinds of assets (realty or personalty)." (*ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at p. 863.)

The board values railroad property primarily through an "income" or "capitalized earnings" approach. (*ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at pp. 863-864; see *Union Pacific Railroad Co.* v. *State Bd. of Equalization* (1991) 231 Cal.App.3d 983, 989 [282 Cal.Rptr. 745].) In using such an approach, "the Board (1) calculates the net operating income of the taxpayer; (2) determines an appropriate capitalization rate, which is the equivalent of a reasonable rate of return; and (3) divides net operating income by the capitalization rate to determine unitary value." (*ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at p. 864, fn. 3.) In so doing it "estimates current fair market value of a property by attempting to determine the amount that an investor would be willing to pay for the right to receive the future income the property is projected to produce. . . . It is frequently summarized by the formula V=I/R, where V is the estimated value of the property, I is the projected future income, and R is a capitalization rate by which the present value of the income stream is determined." (*Union Pacific Railroad Co.* v. *State Bd. of Equalization, supra,* 231 Cal.App.3d at pp. 989-990.) "The Board uses such an approach to determine the unitary value of public utility property because market data are practically nonexistent; public utilities are rarely bought and sold." (*ITT World Communications, Inc.* v. *City and County of San Francisco, supra,* 37 Cal.3d at p. 864, fn. 3.)

"[U]nitary valuation is not limited to the valuation of public utilities nor is it synonymous with centralized state assessment. In theory, the unitary valuation concept is applicable to any combination of property and can be applied, with equal propriety, either by a local assessor or by a central assessing agency." (Bertane, *The Assessment of Public Utility Property in California, supra,* 20 UCLA L.Rev. at p. 426.) However, "[i]n centralized assessments, the valuation ordinarily is made by the unit method." (Amdur, *Telecommunications Property Taxation, supra,* 46 Fed. Comm. L.J. at p. 222.)

Private railroad cars are considered personal property and are subject to a separate tax under California's Private Railroad Car Tax Law. (Rev. & Tax. Code §§ 11201, 11401; *Trailer Train Co.* v. *State Bd. of Equalization* (9th Cir. 1983) 697 F.2d 860, 863.) "The tax rate for private railroad cars is the average rate of general property taxation for the preceding year." (*Trailer Train Co.* v. *State Bd. of Equalization, supra,* 697 F.2d at p. 863; Rev. & Tax. Code, § 11401.) The private railroad car tax "is based on the value of the cars, the length of time they remain in the state, and the average statewide

property tax rate for the previous year." (State Bd. of Equalization, Ann. Rep. for 1987-1988, at p. 30.) Private railroad cars do not include railroad cars owned by a railroad company, which are taxed on a unitary basis. (See State Bd. of Equalization, Ann. Rep. for 1986-1987, at p. 54.)

In California, assessors have a statutory duty to "assess all property subject to general property taxation at its full value." (Rev. & Tax. Code, § 401; see Rev. & Tax. Code, § 1361 et seq.) If an assessor discovers property has "escaped assessment," i.e., has been underassessed or unassessed, he or she has a constitutional duty to levy retroactive assessments. (Rev. & Tax., Code §§ 531-531.7; 1 Ehrman & Flavin, Taxing Cal. Property, *supra*, §§ 14:01, p.1, 14.02, 14.03, pp. 6-9.) Moreover, the "assessor must apply a penalty assessment if the taxpayer willfully or fraudulently fails to report in [its] property statement tangible personal property used in a profession, trade or business or if [it] willfully or fraudulently reports the costs of [its] personal property inaccurately." (1 Ehrman & Flavin, Taxing Cal. Property, *supra*, § 14:09, p. 21; Rev. & Tax. Code, § 531.4; see also Rev. & Tax., Code §§ 482, 483, 485, 502, 504.) "Any taxpayer having the necessary knowledge may file with the board of supervisors an affidavit, alleging that certain property has escaped taxation through the wilful failure or neglect of the assessor, and giving the best description of the property that he can." (Rev. & Tax. Code, § 1362.)

During the tax years at issue, the auditor was required to audit at least once every four years the books and records of any profession, trade, or business with locally assessable trade fixtures and business tangible personal property with a full value of $200,000 or more. (Rev. & Tax. Code, § 469.) "The provisions regarding mandatory audits do not prevent any assessor from conducting any other authorized audit." (Cal. Taxes (Cont.Ed.Bar 1993 2d ed.) § 1.140, p. 122.)

The law generally "presumes that an assessor has performed [his or her] duty and has assessed all properties fairly and on an equal basis. The taxpayer has the burden of proving otherwise." (2 Ehrman & Flavin, Taxing Cal. Property, *supra*, § 27:10, p. 18; see *McDonnell Douglas Corp.* v. *County of Los Angeles* (1974) 42 Cal.App.3d 59, 61 [116 Cal.Rptr. 759].)

B. *Airlines' Claims*

The Airlines assert that the Court of Appeal erred in holding that there is no private right of action directly under former section 1513(d), and in concluding that the Airlines had failed to state a claim for relief under either former section 1513(d)(1)(A) or 42 United States Code section 1983. We address these arguments in turn.

### 1. *Private Right of Action Under AAIA*

██ In determining whether a federal statute creates a private right of action, we apply the now familiar test established by the United States Supreme Court in *Cort* v. *Ash* (1975) 422 U.S. 66 [45 L.Ed.2d 26, 95 S.Ct. 2080].[12] Accordingly, we consider: (1) is the plaintiff " 'one of the class for whose *especial* benefit the statute was enacted' "; (2) "is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) is a private right of action "consistent with the underlying purposes of the legislative scheme"; and (4) "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" (*Cort* v. *Ash, supra,* 422 U.S. at p. 78 [45 L.Ed.2d at p. 36], italics in original.)

These factors are not accorded equal weight. (*Touche Ross & Co.* v. *Redington* (1979) 442 U.S. 560, 575 [61 L.Ed.2d 82, 95-96, 99 S.Ct. 2479].) Rather, "[t]he central inquiry [is] whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose . . . —are ones traditionally relied upon in determining legislative intent." (*Id.* at pp. 575-576 [61 L.Ed.2d at p. 96].) "[W]hat must ultimately be determined is whether Congress intended to create the private remedy asserted . . . ." (*Transamerica Mortgage Advisors, Inc.* v. *Lewis* (1979) 444 U.S. 11, 15-16 [62 L.Ed.2d 146, 152, 100 S.Ct. 242].)

"Accordingly, we begin with the language of the statute itself." (*Transamerica Mortgage Advisors, Inc.* v. *Lewis, supra,* 444 U.S. at p. 16 [62 L.Ed.2d at p. 152].) ██ As noted above, former section 1513(d)(1)(A) proscribes, in part, state assessment of "air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property," and states that such an act "unreasonably burden[s] and discriminate[s] against interstate commerce."

---

[12]"The question whether a federal statute creates a claim for relief is not jurisdictional." (*Northwest Airlines, Inc.* v. *County of Kent* (1994) 510 U.S. 355, 365 [127 L.Ed.2d 183, 194, 114 S.Ct. 855, 862] [assuming without deciding that private right of action exists under the federal Anti-Head Tax Act (AHTA) former 49 U.S.C Appen. § 1513(a)].)

As for the first *Cort* factor, it is apparent that former section 1513(d) was intended to benefit a particular class—those who own air carrier transportation property, or airlines—from certain proscribed conduct, i.e., discriminatory taxation. (See *Cannon* v. *University of Chicago* (1979) 441 U.S. 677, 691-692 [60 L.Ed.2d 560, 571-573, 99 S.Ct. 1946] ["less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting Title IX with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds"]; *Niagara Frontier T.A.* v. *Eastern Airlines* (W.D.N.Y. 1987) 658 F. Supp. 247, 250 [AHTA, former 49 U.S.C. Appen. § 1513(a), protects "not only persons traveling in air commerce, but also those companies who carry persons in air commerce or sell air transportation"].) Thus, former section 1513(d) is distinguishable from other statutory schemes where the high court has declined to find a private right of action. (Cf. *Touche Ross & Co.* v. *Redlington, supra*, 442 U.S. at p. 569 [61 L.Ed.2d at pp. 91-92] [no private right of action under § 17(a) of the Securities Exchange Act of 1934 in part because statute neither confers rights on private parties nor proscribes any conduct as unlawful]; *Cort* v. *Ash, supra*, 422 U.S. at pp. 68, 80 [45 L.Ed.2d at pp. 31, 37] [intent "to protect corporate shareholders . . . was at best a subsidiary purpose" of criminal statute prohibiting corporations from making campaign contributions].)

Second, there is evidence of legislative intent to create a private remedy. As noted earlier, other than the language expressly granting railroads and motor carriers jurisdiction in federal as well as state court, the 4-R and Motor Carrier Acts are in all relevant respects identical to former section 1513(d)(1)(A). ■ A statute that is modeled on another, and that shares the same legislative purpose is in pari materia with the other, and should be interpreted consistently to effectuate congressional intent. (See *Oscar Mayer & Co.* v. *Evans* (1979) 441 U.S. 750, 756 [60 L.Ed.2d 609, 616, 99 S.Ct. 2066] ["Since the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace, since the language of § 14(b) is almost *in haec verba* with § 706(c), and since the legislative history of § 14(b) indicates that its source was § 706(c), we may properly conclude that Congress intended that the construction of § 14(b) should follow that of § 706(c)."].) ■ Defendants concede both the 4-R and the Motor Carrier Acts grant plaintiffs a private right of action. (Cf. *Cannon* v. *University of Chicago, supra*, 441 U.S. at pp. 695, 696 [60 L.Ed.2d at pp. 574-575] [title IX and title VI "use identical language to describe the benefited class" and "when Title IX was enacted, the critical language in Title VI had already been construed as creating a private remedy"].) Thus, while Congress did not include an express exemption to the Tax Injunction Act in former section

1513(d), and thereby expressly authorize litigation in federal court, the fact that the rest of the relevant statutory language is virtually identical to the Motor Carrier and 4-R Acts indicates that Congress did intend that judicial redress be available. (See *Cannon* v. *University of Chicago, supra,* 441 U.S. at pp. 697-698 [60 L.Ed.2d at p. 576] [it is presumed both that Congress was "aware of the prior interpretation of Title VI and that that interpretation reflects their intent with respect to Title IX"].) Indeed, as noted above, the legislative history of former section 1513(d) states that it "makes current law which prohibits the assessment, levying or collecting of taxes on motor carrier property in a manner different from that of other commercial and industrial property, applicable to air carriers." (1982 U.S. Code Cong. & Admin. News, at pp. 1188, 1484; see *Middlesex Cty. Sewerage Auth.* v. *Sea Clammers* (1981) 453 U.S. 1, 17 [69 L.Ed.2d 435, 448-449, 101 S.Ct. 2615] [legislative history relevant to second *Cort* factor].)

Third, a private right of action is "consistent with the underlying purposes of the legislative scheme." As evident from the statutory language and its legislative history, Congress enacted former section 1513(d) to prohibit property tax discrimination against airlines. Enabling airlines to bring an action challenging an allegedly discriminatory ad valorem tax furthers this legislative goal.

Finally, while taxation is an area "traditionally relegated to state law" and "basically the concern of the States," in enacting former section 1513(d), Congress *intended* to interfere with state taxation. It expressly limited the states' authority with respect to airline property taxation, deeming discriminatory taxation an impermissible burden on interstate commerce. (See *Cannon* v. *University of Chicago, supra,* 441 U.S. at p. 708 [60 L.Ed.2d at p. 582] [fourth *Cort* factor not implicated "by a prohibition against invidious discrimination of any sort"].)

The Counties contend that Congress did not intend to grant the Airlines a private right of action under former section 1513(d) because it placed this section in the Federal Aviation Act (FAA). (Former 49 U.S.C. Appen. § 1301 et seq.) They rely on *Air Transport Ass'n* v. *City of Los Angeles* (C.D.Cal. 1994) 844 F.Supp. 550, 554-555, which appears to be in the minority in concluding that there is no private right of action under the AHTA, former 49 United States Code section 1513(a). (Cf. *Northwest Airlines, Inc.* v. *County of Kent, Mich.* (6th Cir. 1992) 955 F.2d 1054, 1058, affd. on other grounds, 510 U.S. 355, 365 [127 L.Ed.2d 183, 194, 114 S.Ct. 855, 862 (1994) [finding private right of action under AHTA]; *Interface Group, Inc.* v. *Mass. Port Authority* (1st Cir. 1987) 816 F.2d 9, 16 [finding

private right of action under AHTA]; *Rocky Mountain Airways, Inc.* v. *Pitkin County* (D.Colo. 1987) 674 F.Supp. 312, 316 [implied right of action under AHTA well settled]; *Niagara Frontier T.A.* v. *Eastern Airlines, supra,* 658 F.Supp. at p. 250 [finding private right of action under AHTA].)

Moreover, former section 1513(d) does not refer to the "Secretary" or contain any other language demonstrating a "Congressional wish for an element of administrative expertise at the enforcement stage." (*Interface Group, Inc.* v. *Mass. Port Authority, supra,* 816 F.2d at p. 14; *id.,* at p. 16 ["absence of the word 'Secretary' from [former § 1513(a)] suggests that Congress did not consider it especially important to employ administrative expertise in the statute's enforcement."].) In contrast, former section 1513*(e),* added in 1990, makes numerous reference to the Secretary of Transportation, and sets forth an elaborate administrative scheme for imposing passenger facility charges. Had Congress intended that former section 1513*(d)* also be enforced administratively, it would have expressly so provided.

We therefore conclude that the Airlines have a private right of action under former section 1513(d), and that the trial court erroneously entered summary judgment on this ground.

### 2. *Airlines' Claim for Relief Under Former Section 1513(d)*

We now turn to whether the Airlines have stated a claim for relief under former section 1513(d). As noted above, " '[o]ur primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory.' " (*Alliance Mortgage Co.* v. *Rothwell, supra,* 10 Cal.4th at p. 1232.)

The Airlines assert that they have stated a claim for relief under former section 1513(d) on the dual theories that 1) despite the facial neutrality of California's taxation system, they suffer de facto discrimination because other commercial and industrial property is underassessed or goes entirely unassessed, and 2) railroad personal property is assessed at a lower percentage of full market value than the Airlines' personal property. We address these arguments in turn.

### a) *Inclusion of Underasessessed or Unassessed Property in the Comparison Class*

The Airlines concede that under California law, all personal property is to be taxed at 100 percent of its fair market value. They contend,

however, that they are victims of "de facto" assessment ratio discrimination because inconsistent enforcement of the tax laws results in all Airline personal property being assessed at 100 percent of its value, while significant amounts of other commercial and industrial property are assessed at a lower percentage or escape assessment altogether, in violation of former section 1513(d). They seek equalization of these amounts.

De facto discrimination arises when state law is facially neutral, but its application nevertheless results in a disparity. (*Clinchfield R. Co.* v. *Lynch* (1981) 527 F.Supp. 784, 785, fn. 3, affd., *Clinchfield R. Co.* v. *Lynch* (4th Cir. 1983) 700 F.2d 126, 130; *Discriminatory Demands, supra*, 39 Vand. L. Rev. at p. 1119.) Such discrimination has been found to occur, for example, when a state's reassessment procedures require railroad property to be assessed annually, but other forms of commercial or industrial property to be assessed less frequently, such as every five years. (*Clinchfield R. Co.* v. *Lynch, supra*, 700 F.2d at p. 130.) "As a consequence of this process, the interstate carriers pay higher taxes than most other commercial and industrial taxpayers because their assessments reflect current increases in true market value while delayed assessment of other property delays increases in their tax assessments." (*Discriminatory Demands, supra*, 39 Vand. L.Rev. at pp. 1119-1120; *Clinchfield R.* v. *Lynch, supra*, 700 F.2d at p. 130.)

By contrast, "de jure" discrimination is typically created by state classification systems, i.e., when different classes of property are assessed at different percentages of full value. (*Atchison, Topeka & Santa Fe Ry.* v. *State of Ariz.* (D.Ariz. 1983) 559 F.Supp. 1237, 1243; *Burlington Northern R. Co..* v. *Lennen* (10th Cir. 1983) 715 F.2d 494, 497; *Discriminatory Demands, supra*, 39 Vand. L.Rev. at p. 1119 ["State property tax classification systems are typical forms of de jure discrimination."]; Amdur, *Telecommunications Property Taxation, supra*, 46 Fed. Comm. L.J. at p. 262.)

The Counties do not dispute the Airlines' claim that former section 1513(d) prohibits both de facto and de jure discrimination. We agree. (See *Burlington No. R. Co.* v. *Okla. Tax Comm'n* (1987) 481 U.S. 454, 461-463 [95 L.Ed.2d 404, 412-413, 107 S.Ct. 1855]; *Discriminatory Demands, supra*, 39 Vand. L. Rev. at p. 1119 [former § 1513(d) "prohibit[s] both de jure and de facto discrimination"].) The question we consider, therefore, is whether unassessed and underassessed property is properly part of the comparison class of "other commercial and industrial property of the same type in the same assessment jurisdiction." (Former § 1513(d)(1)(A).)

We are guided in our analysis by the high court's opinion in *Department of Revenue of Ore.* v. *ACF Industries, Inc., supra*, 510 U.S. at pp. 342-344

[127 L.Ed.2d at pp. 175-176, 114 S.Ct. at p. 850]. In *ACF Industries*, the United States Supreme Court held that a state does not violate the 4-R Act by imposing an ad valorem tax on railroad property while exempting various other, but not all, classes of commercial and industrial property. (*Id.* at pp. 335-337 [127 L.Ed.2d at pp. 170-171, 114 S.Ct. at p. 846].) In so doing, the court noted that Congress had qualified the definition of "commercial and industrial property" by limiting the comparison class to property "subject to a property tax levy." (*Department of Revenue of Ore.* v. *ACF Industries, Inc.*, *supra*, 510 U.S. at p. 342 [127 L.Ed.2d at p. 174, 114 S.Ct. at p. 848].) The court recognized that this language could mean either "taxed property" or "taxable property." (*Ibid.*) Looking at former section 11503 as a whole, the court held that " 'property subject to a property tax levy' must mean 'taxed property.' " (*Id.* at p. 342 [127 L.Ed.2d at p. 175, 114 S.Ct. at p. 849].) Accordingly, because exempt property was not taxed, it was not part of the comparison class of "other commercial and industrial property." (*Ibid.*)

The railroad argued that it would be "nonsensical for Congress to prohibit the States from imposing higher tax rates or assessment ratios upon railroad property than upon other taxed property, while at the same time permitting the States to exempt some or all classes of nonrailroad property altogether." (*Department of Revenue of Ore.* v. *ACF Industries, Inc.*, *supra*, 510 U.S. at p. 346 [127 L.Ed.2d at p. 177, 114 S.Ct. at p. 851].) The court rejected this argument, observing in part that "this is not a case in which the railroads— either alone or as part of some isolated and targeted group—are the only commercial entities subject to an ad valorem property tax. Cf. *Burlington Northern R. Co.* v. *City of Superior*, 932 F.2d 1185 (CA7 1991) (occupation tax on owners and operators of 'iron ore concentrates docks,' in practical effect, applied only to docks owned by one particular rail carrier). If such a case were to arise, it might be incorrect to say that the State 'exempted' the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment." (*Ibid.*)

Here, the Counties assert that "[l]ike exempt property, personal property that inadvertently escapes taxation (notwithstanding the good faith efforts of the assessor) is not 'taxed property' and therefore should not be included as part of the comparison class." This is not entirely correct. Escaped property, unlike exempt property, is by definition taxable; however, that tax has not been assessed or paid.

However, contrary to the Airlines' assertion, we conclude that discrimination under former section 1513(d) is not demonstrated merely by the existence, through no fault of the assessor, of escaped commercial and

industrial personal property. By its terms, former section 1513(d) applies to "a State, subdivision of a State, or authority acting for a State or subdivision of a State," not fraudulent taxpayers. Hence, the action or inaction complained of under former section 1513(d) must be one ascribable to government officials.

Moreover, any claim of de facto discrimination based on the unequal enforcement of otherwise neutral tax laws must consist of some practice or policy on the part of the assessor that has a discriminatory impact or effect. In this time of shrinking local revenue bases, county assessors may simply lack the resources necessary to discover or assess all items of taxable personal property in their jurisdiction. They are therefore compelled to make difficult decisions about the allocation of enforcement resources. As with legislation exempting specific personal property, so long as those enforcement decisions are reasonable, and are neither targeted to disadvantage nor have a disparate effect on a particular group such as the Airlines, we do not believe that Congress intended to condemn the resulting assessment ratios as acts that "unreasonably burden and discriminate against" interstate commerce within the meaning of former section 1513(d). (See *Burlington No. R. Co. v. Okla. Tax Comm'n, supra*, 481 U.S. at p. 463 [95 L.Ed.2d at p. 413] [former 49 U.S.C. § 11503(b) prohibits "systematic undervaluation of other commercial and industrial property"]; *CSX Transp. v. Tennessee State Bd. of Equalization* (M.D.Tenn. 1992) 801 F.Supp. 28, 32 [evidence shows local assessors doing adequate job in discovery and valuation of personal property, not systematic undervaluation and underreporting].)

The Airlines argue that they are not required to demonstrate discriminatory intent. We agree that claims under former section 1513(d) are not limited to claims of intentional discrimination. (See *Burlington No. R. Co. v. Okla. Tax Comm'n, supra*, 481 U.S. at p. 463 [95 L.Ed.2d at p. 413] [former 49 U.S.C. § 11503(b) "speaks only in terms of 'acts' which 'unreasonably burden and discriminate against interstate commerce'; nowhere does it refer to the intent of the actor."].) However, in order to prevail on a claim under former section 1513(d), the Airlines must demonstrate some unreasonably disparate impact or effect on the assessment of their property that results from the action or inaction of the assessor. (See *Burlington Northern R. Co. v. James* (8th Cir. 1990) 911 F.2d 1297, 1300 [plaintiff railroad need not prove that a state intended to discriminate; it need only show that the tax has a discriminatory effect]; *Louisville & Nashville R. Co. v. Dept. of Rev., etc.* (11th Cir. 1984) 736 F.2d 1495, 1498 ["[d]iscriminatory intent is not a precondition to recovery once *disparate impact* is shown"], italics added; *CNW. v. Webster County Bd. of Sup'rs* (N.D. Iowa 1995) 880 F.Supp. 1290,

1308, affd., 71 F.3d 265 (8th Cir. 1995) [complaint under 4-R Act premised on discriminatory treatment, but plaintiff need not show intent to discriminate]; cf. *Department of Revenue of Ore.* v. *ACF Industries, Inc., supra,* 510 U.S. at pp. 346-347 [127 L.Ed.2d at p. 177, 114 S.Ct. at p. 851].)

Moreover, the Airlines bear the burden of demonstrating a practice or policy on the assessor's part that is either targeted to disadvantage or that has an unreasonably disparate effect on the Airlines because it results in significant amounts of unassessed or underassessed other commercial and industrial personal property. (Cf. *Atchison, Topeka and Santa Fe Ry. Co.* v. *Lennen* (10th Cir. 1984) 732 F.2d 1495, 1500-1501 [plaintiff's "real burden is to prove the true market and assessed values of 'all other commercial and industrial property.' "].) ▮▮▮ As noted earlier, in California, assessors have a duty to "assess all property subject to general property taxation at its full value." (Rev. & Tax. Code, § 401; see Rev. & Tax. Code, § 1361 et seq.) If an assessor discovers property has been underassessed or unassessed, he or she has a constitutional duty to levy retroactive assessments. (1 Ehrman & Flavin, Taxing Cal. Property, *supra,* § 14:01, p. 1.) The law generally "presumes that an assessor has performed [his or her] duty and has assessed all properties fairly and on an equal basis. The taxpayer has the burden of proving otherwise." (2 Ehrman & Flavin, Taxing Cal. Property, *supra,* § 27:10, p. 18; see *McDonnell Douglas Corp.* v. *County of Los Angeles, supra,* 42 Cal.App.3d at p. 61.) ▮▮▮ Here, that burden would include adducing evidence of the Counties' assessment practices that the Airlines assert demonstrate unequal enforcement of the ad valorem tax laws, and the discriminatory impact of those practices. Such evidence may include the regularity and effectiveness of County audits of personal property having a significant value, and the existence, performance, and effectiveness of any other County procedures to discover underreported or undervalued property. (See *CSX Transp.* v. *Tennessee State Bd. of Equalization, supra,* 801 F. Supp. at pp. 32-33 [evidence regarding assessment practices failed to demonstrate that commercial and industrial property appraised by local tax assessors substantially below market value].)

We note that unlike the 4-R and Motor Carrier Acts, which both require a 5 percent disparity in assessment ratios before a federal district court may assume jurisdiction, nothing in former section 1513(d) delineates the level of disparity in assessment ratios required to violate that statute. The Airlines assert that "[any] disparity violates the statute." (See *Discriminatory Demands, supra,* 39 Vand. L.Rev. at p. 1148 [Former "[s]ection 1513(d) does not establish any threshold requirements to invoke the court's remedial powers. A court, therefore, may prohibit any minor variation in assessment

ratios resulting in the collection of more taxes from air carriers than from other commercial and industrial property owners." (Fn. omitted.)].) We are skeptical that Congress intended that even a de minimis disparity would result in recovery under former section 1513(d). Because the Airlines assert that there is a 15 percent disparity between the assessment of their property and the assessment of all other commercial and industrial property of the same type, we need not decide what minimum level is appropriate at this juncture.

As noted, the Airlines alleged that their property was "assessed at a value bearing a higher ratio to its true market value than the ratio that the assessed value of other commercial and industrial property in the county has to its true market value in violation of [former] 49 U.S.C. Section 1513." This language adequately states a claim under former section 1513(d) of de facto discrimination based on unequal enforcement of the tax laws. In order to prevail on such a claim, however, the Airlines must demonstrate that any unassessed and underassessed personal property results from a practice or policy on the assessor's part that is either targeted to disadvantage or that has an unreasonably disparate effect on the Airlines. Under these circumstances, unassessed and underassessed property is properly included in the comparison class of "other commercial and industrial property of the same type in the same assessment jurisdiction." (Former § 1513(d)(1)(A); see *Richmond, Fredericksburg & Potomac R. Co.* v. *Forst* (4th Cir. 1993) 4 F.3d 244, 250, fn. 14 [consistent undervaluation of all other commercial and industrial property gives rise to claim under 4-R Act].)

> b) *Inclusion of Railroad Personal Property in the Comparison Class*

The Airlines also assert assessment ratio discrimination because their personal property is assessed at 100 percent of full market value, but railroad personal property is assessed at 70 percent of full market value. Once again, the question we consider is whether railroad property is properly included in the comparison class of "other commercial and industrial property of the same type." (Former § 1513(d)(1)(A).)

The Counties do not dispute the Airlines' claim that railroad property is assessed by the State Board of Equalization at less than 100 percent of full value. Our research has indicated that during at least two of the years at issue, the board applied an assessment ratio of less than 100 percent to the value of "*all* rail transportation property in an effort to remove the equalization issue from possible petitions for reassessment and eliminate further

costly litigation" under the 4-R Act. (State Bd. of Equalization, Ann. Rep. for 1989-1990, p. 28, italics added [68 percent for 1989-1990 year]; see State Bd. of Equalization, Ann. Rep. for 1987-1988, p. 28 [68 percent for 1988-1989 year]; 1 Ehrman & Flavin, Taxing Cal. Property (1995 supp.) § 16:07, p. 167.)[13]

The Counties contend, however, that the comparison class under former section 1513(d) does not include railroad property. They assert two bases: (1) railroad personal property is transportation property and thus excluded under former section 1513(d), and (2) railroad personal property is not of the "same type" as Airline personal property within the meaning of former section 1513(d). Because we agree with the Counties that railroad property is transportation property, we do not reach their second contention.

As noted earlier, former section 1513(d)(1)(A) prohibits a state from "assess[ing] air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." " '[A]ir carrier transportation property' means property, as defined by the Civil Aeronautics Board, owned or used by an air carrier providing air transportation." (Former § 1513(d)(2)(C).) " '[C]ommercial and industrial property' means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy." (Former § 1513(d)(2)(D).)

The Airlines assert that "transportation property" means "air carrier transportation property," and thus the only property (relevant to the issues in this case) excluded from the comparison class of other commercial and industrial property is airline, not railroad property. They argue that the exclusion of "transportation property" from the definition of other commercial and industrial property merely acknowledges that assessments on airline property must be compared with assessments on nonairline property. However, we generally do not construe *different* terms within a statute to embody the same

---

[13]In addition, as a result of "long-term federal litigation based on the [4-R] Act," during at least two of the years at issue the board applied a less than 100 percent ratio to the value of private railroad cars. (State Bd. of Equalization, Ann. Rep. for 1987-1988 at p. 30 [68 percent for 1988-1989]; State Bd. of Equalization, Ann. Rep. for 1989-1990, p. 29 [68 percent in 1989-1990, and "will be 70.38 percent" for 1990-1991].) "Private railroad cars are considered personal property and are subject to a separate tax under California's Private Railroad Car Tax Law." (*Trailer Train Co.* v. *State Bd. of Equalization, supra*, 697 F.2d at p. 863; Rev. & Tax. Code, § 11401.) Private railroad cars do not include railroad cars owned by a railroad company, which are taxed on a unitary basis. The parties here do not distinguish between private railroad cars and other railroad property.

meaning. Rather, it appears that when Congress used the term "transportation property" in former section 1513(d)(2)(D), it meant something different than "air carrier transportation property."

As noted earlier, the 4-R and the Motor Carrier Acts also exclude "transportation property" from their definitions of other commercial and industrial property. Moreover, just as former section 1513(d) refers to "air carrier transportation property," the 4-R Act and the Motor Carrier Act respectively refer to "rail transportation property" and "motor carrier transportation property." Thus, it is unnecessary for us to comprehensively define "transportation property" or enumerate all of the property that could constitute "transportation property." It is apparent that at least as among these three companion statutes, "transportation property" encompasses not only airline, but rail and motor carrier transportation as well.

Moreover, Congress's purpose in enacting former section 1513(d), the 4-R Act, and the Motor Carrier Act was to *forbid* discrimination against all three entities, railroads, motor carriers, and airlines. Given the strong federal statutory policy against property tax discrimination involving these carriers, it is unlikely that Congress intended to include other forms of transportation property in the comparison class of "other commercial and industrial property."

The Airlines assert that as originally enacted in 1976, the 4-R Act defined "transportation property" as "transportation property, as defined in regulations of the Commission, which is owned or used by a common carrier by railroad subject to this part or which is owned by the National Railroad Passenger Corporation." (Pub.L. No. 94-210 (Feb. 5, 1976) § 306, 90 Stat. 31, 55.) This language was changed and recodified at former 49 United States Code section 11503 as part of the Revised Interstate Commerce Act of 1978. (Pub.L. No. 95-473, 92 Stat. 1445-1446; *Atchison, T. & S. Ry. Co.* v. *Lennen* (10th Cir. 1981) 640 F.2d 255, 257-258.) These revisions were not intended to change the law. (Pub.L. No. 95-473, 92 Stat. 1466 [these "sections may not be construed as making a substantive change in the laws replaced"]; *Burlington No. R. Co. Co.* v. *Okla. Tax Comm'n, supra*, 481 U.S. at p. 457, fn. 1 [95 L.Ed.2d at p. 409].) Thus, the Airlines argue that because it was apparent under the former language of the 4-R Act that "transportation property" meant railroad property, not all entities that engaged in transportation, the term "transportation property" in former section 1513(d)(2)(D) must also mean air carrier property, and not all transportation property.

However, we have already noted that while the original version of the 4-R Act referred only to "transportation property," the amended version refers to

both "transportation property" and "rail transportation property." Similarly, the Motor Carrier Act and former section 1513(d) refer respectively to "motor carrier transportation property" and "air carrier transportation property" as well as "transportation property." Because Congress explained that it intended no substantive change when it amended the 4-R Act, we must assume that its use of *different* terms in the amended 4-R Act—and subsequently in the Motor Carrier Act and former section 1513(d)—where it had previously only used the term "transportation property," was simply meant to clarify that "transportation property" as used in the original 4-R Act had two different meanings. These meanings were clarified by substituting the term "rail transportation property" where Congress meant to refer to such property, and retaining "transportation property" where Congress intended to refer to a broader definition of property. Likewise, "transportation property" in former section 1513(d)(2)(D) means something different than "air carrier transportation property."

In addition, the Airlines assert that prior to the 1982 passage of former section 1513(d), one court had concluded that under the 4-R Act, airlines were part of the comparison class for railroads. (*Ogilvie* v. *State Bd. of Equalization* (8th Cir. 1981) 657 F.2d 204, 209.) Congress generally is presumed to be aware of judicial interpretation of a statute, and to adopt that interpretation when it enacts a new law incorporating sections of a prior law. (*Lorillard* v. *Pons* (1978) 434 U.S. 575, 580-581 [55 L.Ed.2d 40, 45-56, 98 S.Ct. 866].) *Ogilvie* did not, however, focus on the issue of whether airlines were transportation property. Rather, the court concluded that both locally and centrally assessed property were included in the comparison class for railroads, and then noted without discussion that the comparison class also included airlines. (657 F.2d at pp. 208-209.) Accordingly, we are not compelled to conclude, based on a fleeting reference in a single case, that Congress intended the comparison class for airlines to include railroad property.

In sum, we conclude that railroad property is transportation property within the meaning of former section 1513(d)(2)(D). The trial court therefore properly granted summary judgment on this basis.

### 3. *Cause of Action Under 42 United States Code Section 1983*

The Airlines assert that they have a cause of action under 42 United States Code section 1983. As the Court of Appeal observed, this claim was not addressed by the parties in the summary judgment proceedings below. Accordingly, because we reverse the entry of summary judgment on other

grounds, we need not review the correctness of the Court of Appeal's conclusion that the Airlines may not state a claim under section 1983. The Airlines may assert this claim on remand, and the trial court may consider it in the first instance.

CONCLUSION

The judgment of the Court of Appeal affirming the entry of summary judgment is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

Lucas, C. J., Mosk, J., Baxter, J., George, J., and Werdegar, J., concurred.

**KENNARD, J.,** Concurring.—In California, personal property, unless expressly granted an exemption, is subject to an ad valorem tax, which is a tax levied on property in proportion to its value. (Rev. & Tax. Code, § 201.) All personal property must be assessed at 100 percent of its fair market value. (*Id.,* § 401.)

The lawsuit in this case, a coordinated action against 18 counties for a refund of personal property taxes for the years 1985, 1986, 1987, 1988, and 1989, was brought by 10 commercial airlines. They alleged that while their personal property was assessed at its full value, as provided under the law, the commercial and industrial personal property of others was assessed at amounts below full value, resulting in discriminatory assessments against the airlines, in violation of the Airport and Airway Improvement Act of 1982 (AAIA). (49 U.S.C. § 40116(d), formerly 49 U.S.C. Appen. § 1513(d) (hereafter former section 1513(d)).)[1]

The majority holds: (1) the airlines have a private right of action for de facto discrimination under former section 1513(d) (maj. opn., *ante,* at pp. 1131, 1132); (2) to establish such discrimination in this case, the airlines must prove that the underassessment of other commercial and industrial property "results from a practice or policy on the assessor's part that is either targeted to disadvantage or that has an unreasonably disparate effect on the Airlines" (maj. opn., *ante,* at p. 1136); and (3) the airlines may not establish a violation of former section 1513(d) by comparing the assessment ratio of their personal property to the assessment ratio of railroad personal property (maj. opn., *ante,* at pp. 1137, 1139). I agree with each of these holdings.

I write separately to express my concern that the majority opinion, because it permits the airlines to maintain a cause of action against the

---

[1]Section 1513(d), which has been recodified in substantially the same form in 49 United States Code section 40116(d), was in effect during the tax years here in issue.

counties for a refund, may be read to imply that the airlines will necessarily be entitled to a refund if they show that the counties have in their taxation engaged in de facto discrimination. In my view, a refund should not be available as a remedy to the airlines without first affording the government an opportunity to redress the discrimination by correcting the underassessments of other commercial and industrial property.

In this case, the airlines concede that their personal property was assessed at 100 percent of fair market value (maj. opn., *ante*, at p. 1119 fn. 5), as provided under state law (Rev. & Tax. Code, § 401). Their claim is that they paid too much in taxes, not because their personal property was overassessed, but because the commercial and industrial personal property of others was underassessed. So they seek a refund.

In my view, before allowing the airlines a refund (if they succeed in establishing discriminatory assessment) the county assessors should be given an opportunity to end the discriminatory assessment of the airlines by correcting underassessments of other commercial and industrial property. (See, e.g., *Allegheny Pittsburgh Coal* v. *Webster County* (1989) 488 U.S. 336, 346 [102 L.Ed.2d 688, 698-699, 109 S.Ct. 633]; *Iowa-Des Moines Bank* v. *Bennett* (1931) 284 U.S. 239, 247 [76 L.Ed. 265, 273, 52 S.Ct. 133].) California law requires county assessors to retroactively assess property that has been underassessed. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946-947 [106 Cal.Rptr. 643, 506 P.2d 1019]; *Ex-Cell-O Corp.* v. *County of Alameda* (1973) 32 Cal.App.3d 135, 139-140 [107 Cal.Rptr. 839]; Rev. & Tax. Code, § 531; 1 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1988) § 14:01, p. 1.)[2] Also, there is no requirement of a refund under the federal statutory scheme. The AAIA requires only that an air carrier's personal property be taxed the same as

---

[2]In underassessment cases, the better remedy would be to allow local government to redress any discrimination through retroactive assessments of the underassessed property. To order refunds instead could lead to anomalous results, as the following example illustrates. If 10 taxpayers, 1 of which is an airline, each have commercial and industrial personal property worth $10,000 and the property of 1 of the 9 nonairline taxpayers escapes assessment, 9 of the 10 taxpayers will each have paid $100 in taxes and the 10th will have paid nothing. Under the refund remedy proposed by plaintiff airlines in this case, the trial court, in the hypothetical just given, must order a refund to the airline, rather than compel the assessment of, or allow the government to retroactively assess, the 10th taxpayer's personal property. So the airline receives a full refund, the nonassessed 10th taxpayer can continue to evade taxation, and the remaining nonairline 8 taxpayers pay taxes at the legally required rate of 1 percent of their personal property's full value because their personal property is not "air carrier transportation property" and the nonairline taxpayers are therefore not entitled to the benefits of the AAIA. The result is that the eight taxpayers pay $100 each, two "taxpayers," including the airline, pay nothing, and local government loses 20 percent of its revenues. Such anomalies can be avoided by allowing the county assessors to remedy any discrimination by retroactive

other commercial and industrial property. (49 U.S.C. § 40116.) There is nothing in the AAIA to suggest that Congress intended to deny local government the opportunity to correct any discriminatory assessments through retroactive assessments and to require instead that the government remedy past underassessments of others by giving a tax refund to an airline that has been properly assessed under state law.

With this reservation, I concur in the majority opinion.

---

assessment of the underassessed properties. This approach comports with our law, which, as demonstrated above, requires our assessors to retroactively assess underassessed property.