Filed 5/13/15  Johnson v. County of Los Angeles CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| YOLANDA JOHNSON, | B255587 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC481413) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

The Law Offices of Marvin L. Mathis and Marvin L. Mathis for Plaintiff and Appellant.

Gutierrez, Preciado & House and Calvin House for Defendant and Respondent.

\* \* \* \* \* \*

In this employment case, plaintiff Yolanda Johnson, a longtime employee of the County of Los Angeles (the County), alleged retaliation, disability discrimination, and harassment. Johnson appealed from the judgment of dismissal for the County after the trial court granted the County's summary judgment motion. We affirm. The County proffered sufficient evidence of legitimate, nondiscriminatory reasons for its actions. In addition, the conduct of which Johnson complains does not fall within the meaning of harassment.

**FACTS AND PROCEDURE**

**1. Allegations of Complaint**

Johnson is a 25-year employee with the County. In February 2007, the County promoted her to Departmental Human Resources Manager III of the Probation Department. Her duties included supervising the implementation of county, state, and federal disability discrimination laws.

On December 21, 2009, she injured her upper extremities, neck, and back when she was moving employee personnel files from one location to another. Johnson also alleged her job-related stress and strain resulted from retaliation and harassment because she objected to the County's unlawful employment practices.

The County initiated a baseless investigation of Johnson after she took time off for physical and mental health treatment and missed a meeting from which her immediate supervisor had excused her. On March 31, 2010, her treating physician took her off work due to a temporary inability to perform her duties. Also on March 31, she received a negative performance evaluation, notwithstanding her history of receiving a rating of "outstanding" or "very good" on all prior performance evaluations. The County issued her a "Notice of Intent to Reduce" (NIR) from Departmental Human Resources Manager III to Administrative Service Manager III. This demotion caused a reduction in responsibilities, salary, and benefits.

Johnson's first cause of action alleged retaliation, citing Government Code section 12653.[1] Specifically, she alleged the County retaliated against her for complaining of or reporting disability discrimination against Probation Department employees. Her second cause of action alleged disability discrimination under section 12940, subdivision (a), part of the California Fair Employment and Housing Act (FEHA). (§ 12900 et seq.) Her third cause of action alleged harassment under section 12940, subdivision (k).

**2. *Summary Judgment Motion***

The County moved for summary judgment, arguing (1) the cause of action for retaliation under section 12653 failed because section 12653 falls under the False Claims Act (§ 12650 et seq.), and the False Claims Act did not protect Johnson's complaints; (2) the cause of action for disability discrimination failed because no person who had a role in Johnson's demotion knew she had a disability, the County had nondiscriminatory reasons for the demotion, and there was no evidence those reasons were pretextual; and (3) the cause of action for harassment failed because those who allegedly harassed Johnson did not know she had a disability, and the conduct was not severe or pervasive.

*A. Evidence Supporting the Motion*

As of November 2005, Johnson was Head of Personnel Operations for the Probation Department. The County promoted her to Departmental Human Resources Manager III for the Probation Department in February 2007. The promotion came with additional compensation, though her job duties remained the same as before. Essentially, Johnson was head of human resources for the Probation Department. Johnson was responsible for Probation's personnel operations, payroll operations, examinations, recruitment and selection, performance management, classifications, the return-to-work

---

[1]    Further undesignated statutory references are to the Government Code unless otherwise noted.

program,[2] background investigations, employee relations, and grievances. She supervised 60 to 65 employees when she took over in 2005.

In response to interrogatories, Johnson stated her disability arose when she injured her shoulders, right hand, right wrist, and lower back on December 21, 2009. She reported the injuries to her supervisor, Robert Smythe, at the time they happened. On January 21, 2010, she filled out a claim for workers' compensation benefits and described the injuries mentioned above, as well as neck pain, headaches, and anxiety attacks.

Also in response to interrogatories, Johnson identified her demotion as the adverse employment action at issue. The County submitted voluminous evidence of the process and investigation that led to the March 31, 2010 NIR. The NIR stated the basis for the demotion was failure to meet guidelines for ethical behavior, failure to follow established rules and policies, and failure to perform job duties.

i. Performance Issues

The NIR relied on Johnson's most recent performance review for the period July 1, 2009, to March 31, 2010, and identified unresolved performance deficiencies going back several years. The NIR asserted Johnson had failed to take corrective actions that the Chief Executive Office (CEO) and the Department of Human Resources identified in several different performance audits. Much of the County's summary judgment evidence consisted of declarations and deposition testimony of the individuals who performed the audits and Johnson's superiors, who were responsible for managing or evaluating her. The County also proffered documentary evidence such as audit reports and email correspondence. The performance audits and deficiencies identified in the NIR included the following.

---

[2] The return-to-work program referred to the efforts to literally return injured or ill employees to work, whether in the same, temporary, permanently modified, or alternate positions.

4

Department of <u>Human Resources Audit of 2006 to 2007</u>: Analysts with the County's Department of Human Resources conducted an audit of the Probation Department's human resources division. The audit identified 32 deficiencies within Probation's performance management, operations, health and safety, and employee relations functions. The audit generated corrective actions for each. The analysts created periodic status reports to monitor the status of corrective actions. The January 2008 status report concluded Probation had not corrected a number of problem areas, including a backlog of disciplinary actions, noncompliance with *Skelly*[3] guidelines, untimely processing of grievances, the failure to maintain current medical certification for employees on leaves of absence, and the failure to resolve pending return-to-work cases. A June 2009 audit concluded the corrective actions still had not been fully implemented. (We further discuss the June 2009 audit below.)

<u>February 2008 Directive Regarding Officer Examinations</u>: In January 2008, the state changed its scoring methodology for the juvenile corrections officer's and probation officer's written tests. The County's Department of Human Resources directed Johnson and her subordinates to implement a series of changes to bring Probation into compliance with the new methodology. They had until March 31, 2008, to comply. By April 23, 2008, Probation had not made the necessary changes, and the County's Department of Human Resources tried to assist Probation with implementing the changes. The June 2009 audit determined Probation still had not fully implemented the changes.

<u>February 2008 Intervention Regarding Detention Services Officer Examinations</u>: Sometime between 2007 and 2008, Department of Justice monitors recommended that Probation increase its juvenile hall daytime supervision staff, or Detentions Services

---

[3]     *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 (*Skelly*) held that permanent civil service employees are entitled to minimum preremoval safeguards, including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.)

Officers (DSO). Probation required approximately 200 additional daytime staff as a result. Probation had a large backlog of applications for the DSO exam awaiting review and was not efficiently scheduling exam interviews and pre-employment medical exams. In or around February 2008, the County's Department of Human Resources sent staff to intervene at Probation and oversee the DSO hiring process. The intervention included written recommendations for the process. After the Department of Human Resources staff completed their time at Probation, Johnson failed to continue to follow the staff's recommendations.

June 2009 Department of Human Resources Audit: On June 29, 2009, the Department of Human Resources commenced an audit of Probation because the County's CEO was concerned about a backlog of unprocessed employment applications and the efficiency of Probation's examination administration process. The 24-page audit report found Probation had approximately 8,166 applicants at various stages of the application process, but no plan or process for handling the applications and testing. The backlog extended back to 2007. The audit also concluded Probation had significant deficiencies in the administration of examinations, including Johnson's failure to implement corrective actions or recommendations from prior audits. The auditors recommended a six-month evaluation period for monitoring Probation's efforts to resolve the backlog and examination issues. The audit report contained specific recommendations for correcting the deficiencies.

September 2009 CEO Audit: In September 2009, the County's Board of Supervisors instructed the CEO to evaluate the effectiveness of Probation's return-to-work program. Probation provided the CEO with 440 open return-to-work cases, and the CEO selected 10 percent of the files for review. The audit identified a number of deficiencies in the files, such as failure to show ongoing communications with the employee and employee's supervisor, failure to show a long-term action plan, failure to document attempts to explore reasonable accommodations, and failure to document the interactive process meetings and their outcomes.

6

December 2009 to January 2010 Audit by Probation Technical Assistance Team: In December 2009, the CEO created the Probation Technical Assistance Team to assess business processes in Probation, identify deficiencies, and provide assistance in correcting them. The team assessed Probation in the areas of discipline/advocacy, examination administration, item control/organization/staffing, and the return-to-work program. The auditors determined Probation had a backlog of 477 disciplinary actions and 192 unresolved grievances. The auditors also determined previous interventions from the Department of Human Resources in the area of examination administration (the 2006-2007 audit, the February 2008 intervention, and the June 2009 audit) had not resulted in "substantive changes" in examination practices. The auditors found Probation's human resources division still was "not effectively or appropriately administering the examination program." Further, the auditors found Probation had made no progress on the corrective action plans for the small number of return-to-work files reviewed during the September 2009 audit.

At the beginning of 2010, the Department of Human Resources gathered documentation relating to the various assessments of Probation's human resources division and presented it to the acting head of Probation, Acting Chief Probation Officer Calvin Remington. After reviewing the documentation and consulting with individuals from the Department of Human Resources, the CEO, and Probation, Remington decided to demote Johnson.

Remington also decided to give Johnson a rating of "failed to meet expectations" on her March 2010 performance review, based in large part on the determination that she had failed to implement corrective actions identified in the foregoing audits. Johnson's review stated: "[Y]ou have demonstrated a pattern of willful disregard to implement corrective measures in numerous areas . . . . This has led to the current malfunctioning state of many of the HR programs in the Probation Department. This complete failure of organizational responsibility has defeated any trust or confidence in your ability to manage the Department's human resources organization effectively."

7

ii.  Administrative Investigation

Aside from the performance issues, Johnson's poor rating in the March 2010 performance review was based on her response to an administrative investigation into her absence at a December 23, 2009 meeting with County Supervisor Gloria Molina.  The NIR likewise cited her failure to be "forthcoming" in the administrative investigation as a basis for the NIR.  Johnson attended a December 22, 2009 meeting with Supervisor Molina to discuss Probation's return-to-work program.  The supervisor ordered everyone to return the following day for a further meeting.  Johnson indicated she would attend, but she did not.  This meeting was "critical" because Probation's executive team and human resources staff were to meet with Supervisor Molina's office and the CEO on what was considered a "high-priority assignment"—specifically, Probation was to demonstrate to the CEO and the supervisor that it had, indeed, acted on the concerns raised in the September 2009 audit of return-to-work files.  Johnson had requested time off from December 28, 2009, to January 6, 2010.  Because of the nature of the meeting, and allegations that Johnson had improperly failed to attend the meeting because of her planned vacation that was to start several days later, the County's Department of Human Resources conducted an investigation into her absence.

Epifanio Peinado, Assistant Director for the County's Department of Human Resources, conducted the investigation.  Peinado commenced the investigation on or around January 11, 2010, at the request of the County's CEO.  He interviewed Johnson, her immediate supervisor, Smythe, and eight more individuals.  Smythe informed Peinado that he had received a call from Johnson on the night of December 22.  Johnson told Smythe she had a family emergency in Atlanta, Georgia relating to the care and custody of her daughter's children and could not attend the meeting on December 23.  Johnson had received a call from her teenage granddaughter that her mother (Johnson's daughter) had been arrested, and the four minor grandchildren were left alone as a result.  Smythe recalled that Johnson said she needed to fly out that evening.  Other participants at the December 23 meeting reported that Smythe said Johnson had a family emergency and was "'on a plane' or words to that effect."  Peinado asked Johnson to provide proof

8

of her air travel. Johnson responded that she did not fly, but instead started driving to Atlanta because she needed to bring her four grandchildren back with her. She began driving on the evening of December 22 and turned around halfway there because she received a call that the emergency had been resolved. Because of the inconsistencies in the evidence about her mode of travel, Peinado asked Johnson to produce receipts for gas or lodging during her drive, but Johnson stated she did not have any and thus did not produce any documentation.

In his investigative report, Peinado concluded that the allegation Johnson had misrepresented her need to be off on December 23 was *not* substantiated, but it was still "unclear if there was a family emergency the night of December 22, 2009 that necessitated [her] need to be out-of-town, because of the conflicting information she provided to her supervisor and to the investigators about her travel arrangements to Atlanta, Georgia. In addition, [she] has not provided to date any documentation to support her statements, regarding her travel arrangements that caused her to be out-of-town." Peinado further concluded Johnson (1) reported inaccurate information to Smythe regarding her travel arrangements when she sought approval to miss the December 23 meeting, and (2) reported inaccurate and incomplete information during the administrative investigation. Therefore, the investigation determined she had violated departmental "Directive 1211 that require[d] all employees to cooperate with internal departmental and external County administrative investigations by providing truthful and complete responses to questions asked by investigator(s) and provid[ing] any and all requested information or evidence."

iii. *Skelly* Hearing and Final Notice

Johnson's attorney obtained the materials on which the NIR was based and Johnson reviewed them. Johnson's *Skelly* hearing to respond to the charges in the NIR took place on April 21, 2010, and was presided over by Cynthia McCoy-Miller, Senior Deputy Director of the County's Department of Children and Family Services. Peinado also attended the *Skelly* hearing "to be of technical assistance" to McCoy-Miller. After

9

hearing Johnson's testimony and evidence and the County's evidence, McCoy-Miller recommended that the County move forward with its decision to demote Johnson.

On or about May 28, 2010, Johnson received a permanent notice of reduction signed by Remington, notifying her that she was being demoted as explained in the NIR.

### 3. *Johnson's Evidence in Opposition to Summary Judgment Motion*

Johnson's opposition argued that the stated reasons for demoting her were untrue—that is, she asserted the purported performance failures in the NIR had already been addressed, and she truly had a family emergency to excuse her absence from the December 23 meeting. Her immediate supervisor Smythe had signed and given her all prior performance reviews since November 2005 to June 30, 2009. He consistently gave her very good ratings and glowing reviews that indicated she had met or exceeded expectations throughout that period. She had no history of disciplinary actions.

The NIR failed to acknowledge Probation's written responses to some of the audits, including quarterly status reports relating to the 2006-2007 audit and a finding-by-finding response to the June 2009 audit, issued in January 2010.

Regarding her March 2010 performance review, Johnson also pointed to what she thought were procedural improprieties. Remington had been acting head of Probation less than 60 days when he approved Johnson's performance review in March 2010. County policy "suggested" that, when a person has supervised an employee for less than 60 days, another person who has supervised the employee for a longer period be consulted for the employee's performance review. In this case, however, neither Remington's predecessor nor Smythe was consulted for Johnson's review. Although Remington signed the NIR and the performance review, he relied on others in the Department of Human Resources to draft them. Peinado and his supervisor prepared these documents and consulted with Remington on them.

Regarding the administrative investigation, Johnson asserted Peinado's conclusions were unjustified. Specifically, the evidence did not support the conclusion that she misrepresented her mode of transportation. Johnson testified she missed the meeting with the supervisor on December 23 because she received the call that her

10

daughter had been arrested in Atlanta. She advised Smythe of the situation and her concern that her grandchildren would be placed in protective custody. He approved her request to be off. After finishing some work for the following day's meeting, she went home and began looking at flights. The next morning she decided to drive and left with her son for Atlanta. En route, she received a call from her daughter saying that the authorities had released her temporarily. Smythe testified at deposition that Johnson did not know what mode of transportation she would use when they talked on the night of December 22. He denied telling anyone that Johnson was going to "fly out of town."

Johnson argued she was discriminated against because she was injured and became disabled in December 2009, and she was harassed and retaliated against for opposing an unlawful practice in return-to-work cases. In particular, Johnson testified that at the December 2009 meeting with Supervisor Molina, the supervisor directed Probation to deal with return-to-work cases by either (1) bringing employees back to work "at their full capacity," (2) demoting them to a position they could perform, or (3) discharging them. Johnson responded that the process was not so simple that it could be reduced to just those three outcomes, and she refused to implement the supervisor's plan, but the supervisor did not accept her response. Johnson asked for direction on implementing the supervisor's plan; Deputy County Counsel, also present at the meeting, told her "such a plan would create a liability for the County if written." Smythe was also present for the meeting with Supervisor Molina, who was looking at and commenting on Probation's return-to-work files. He felt the supervisor's tone toward him and Johnson as she was examining the files was "very derogatory, very accusatory, [and] nasty."

### 4. *Trial Court's Ruling*

The court granted the County's summary judgment motion in its entirety. First, it held Johnson had no cause of action for retaliation under the section cited in her complaint, section 12653, because the False Claims Act did not apply in this case. The court noted that, even if the complaint cited section 12653 by mistake, Johnson did not acknowledge the mistake. Second, the court held the disability discrimination cause of action lacked merit because the County showed it had legitimate, nondiscriminatory

11

reasons for the demotion—namely, performance deficiencies and providing inaccurate information in the administrative investigation.  It found Johnson failed to dispute this showing with evidence of pretext or discriminatory animus.  The court, however, expressly rejected the County's argument that the decisionmakers were unaware she had a disability.  The court found Johnson had filed a workers' compensation claim for her December 2009 injury and reported the injury to her immediate supervisor.  Third, and finally, the court held the cause of action for harassment failed because there was no evidence that Johnson was harassed because of a disability.

The court entered a judgment dismissing the complaint with prejudice.  Johnson filed a timely notice of appeal.

## STANDARD OF REVIEW

A court shall grant a motion for summary judgment if all the papers show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  As the party moving for summary judgment, the employer in a FEHA action has the burden of establishing either (1) one or more elements of the employee's cause of action cannot be established, or (2) a complete affirmative defense to the cause of action exists.  (Code Civ. Proc., § 437c, subds. (*o*)(1), (2), (p)(2).)  To demonstrate the elements of a cause of action cannot be established, the employer may show the employee does not possess evidence needed to support a prima facie case and also cannot reasonably obtain the needed evidence.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.)  The employer may also, but need not, present evidence conclusively negating an element of the cause of action.  (*Ibid.*)  Once the employer has met its initial burden, the burden shifts to the employee to produce evidence showing a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2).)

On appeal from summary judgment, we review the record de novo and must independently determine whether triable issues of material fact exist.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We resolve any evidentiary doubts or ambiguities and view all inferences from the evidence in favor of the party opposing summary judgment.  (*Aguilar*

*v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 843; *Saelzler v. Advanced Group 400, supra*, p. 768.)

## DISCUSSION

### 1.  *Disability Discrimination Cause of Action*

The trial court did not err in granting the motion on the disability discrimination cause of action.  FEHA prohibits employers from discriminating against employees because of their physical disabilities "in compensation or in terms, conditions, or privileges of employment."  (§ 12940, subd. (a).)  A prima facie case of disability discrimination under FEHA requires the employee to show he or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was subjected to adverse employment action because of the disability.  (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.)  Once the employee establishes a prima facie case, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action."  (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 44.)  The employee may still defeat the employer's showing with substantial evidence that the proffered reason is pretextual or with other evidence that the employer acted with discriminatory animus.  (*Ibid*.; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 806.)  The employee may demonstrate pretext by showing the proffered reason had no basis in fact, the proffered reason did not actually motivate the adverse employment action, or the proffered reason was insufficient to motivate the adverse employment action.  (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1195.)

An employee does not demonstrate pretext merely by showing "the employer's decision was wrong, mistaken, or unwise."  (*Horn v. Cushman & Wakefield Western, Inc., supra*, 72 Cal.App.4th at p. 807.)  Rather, the employee must show  """"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons"""" such that a reasonable factfinder would rationally find the reasons not credible, and would therefore infer the employer did not act for legitimate reasons.  (*Ibid.*)

13

Assuming Johnson had evidence to support a prima facie case, the County proffered substantial, legitimate, nondiscriminatory reasons for her demotion. To begin with, the County showed significant performance issues. Her March 2010 performance review covered the period July 1, 2009, through March 31, 2010. Remington appropriately considered the results of the June 2009 audit, which only commenced on June 29, for that review period. The results of this audit showed, among other things, that corrective actions identified in the 2006 to 2007 audit and the 2008 directive regarding officer examinations still had not been implemented. The June 2009 audit also showed a large continuing backlog of applicants dating back to 2007. In addition, Remington appropriately considered the results of the September 2009 audit of the return-to-work function—showing deficiencies in the administration of return-to-work cases—and the December 2009 to January 2010 audit by the Probation Technical Assistance Team— showing deficiencies in disciplinary actions, grievances, examinations, and return-to-work cases. These audits provided evidence for the conclusion in the performance review and the NIR that Johnson was not effectively managing the human resources division of Probation, particularly in that problems from prior years were persisting into the latest review period.

Johnson contends she presented substantial evidence that these performance issues were a pretext, but we disagree. She argues pretext is shown by the fact that her prior performance reviews from November 2005 to June 2009 were all very positive. This argument is unpersuasive. Those earlier reviews predated the audits in June 2009 and later, which showed prior problems persisted and identified newer issues. Thus, the earlier reviews could not possibly have taken into account the results of audits not yet conducted. She also asserts the performance issues "had been properly addressed by Probation" before the NIR, and one of the authors of the NIR (Peinado's colleague in the Department of Human Resources) acknowledged Probation had properly addressed the issues. Peinado's colleague acknowledged being familiar with Probation's written response to the June 2009 audit, which Probation sent in January 2010. She did not, however, say the response properly addressed the issues in the audit. She said that while

14

the Department of Human Resources accepted Probation's response, it "did not agree with it."**4**  At best, this evidence shows Probation disagreed with the findings of deficiencies in the audit.  This might show the auditors were wrong or mistaken in their conclusions in the June 2009 audit.  But this is not sufficient; the evidence does *not* show the decision to demote was based on weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions such that a reasonable factfinder would find the decision to be incredible.  Moreover, Probation's response addressed the June 2009 audit only, and not the other findings of deficiencies in the later audits.

Johnson next relies on purported procedural irregularities relating to the March 2010 performance review and the *Skelly* hearing.  None of these things demonstrate her performance issues were a pretext.  She points out that Remington did not prepare her review and depended on others to prepare it before signing it.  It is unclear why the acting head of Probation had to personally prepare the document or the NIR.  While he relied on others to prepare the documents, he reviewed the documentation underlying them.  The fact that he did not draft them does not show they were a pretext.  Likewise, the fact that he signed the performance review when he had been acting head of Probation for less than 60 days does not show the review was a pretext for discrimination.  Johnson contends this violated County policy.  There was no evidence of a hard and fast policy prohibiting Remington from signing the review if he had been department head for less than 60 days.  Peinado testified merely that it was "suggested" a department head consult with the employee's immediate supervisor if he or she had been in the position for less than 60 days.  Remington's predecessor, the prior Chief Probation Officer, had signed Johnson's previous reviews along with Smythe.  But Remington's predecessor was no

---

**4**      Peinado's colleague was Sandra Taylor, who headed the County's Department of Human Resource's "Impact Division" at the time of the relevant events.  The Impact Division "assist[ed] County departments with assessing the effectiveness and efficiency of Human Resources functions such as performance management, employee relations, classifications and compensation."  The Impact Division employed some of the analysts who conducted the audits at issue.

15

longer with Probation at the time of the review, and Smythe was also no longer with Probation at the time. Johnson additionally contends it was improper for Peinado to sit in on her *Skelly* hearing because he conducted the administrative investigation and lacked objectivity. She asserts Remington recognized the impropriety in having him there. Her argument does not accurately represent his testimony, though. Remington testified that in the case of a high-level manager like Johnson, typically a manager from another County department would preside over the hearing, and normal practice was to have someone uninvolved in the investigation serve as the *Skelly* hearing officer to ensure objectivity. Remington's understanding is consistent with case law holding that implied in the *Skelly* "right to respond" is a right to respond "before a reasonably impartial, noninvolved reviewer." (*Williams v. County of Los Angeles* (1978) 22 Cal.3d 731, 736-737.) In this case, McCoy-Miller, a manager from the County Department of Children and Family Services, served as the *Skelly* hearing officer and decided to recommend demotion. Peinado's presence at the hearing does not demonstrate that he was the hearing officer or that the *Skelly* hearing lacked objectivity. Johnson and her attorney were also present. McCoy-Miller considered both the County's and Johnson's evidence before making a decision. There was no showing that McCoy-Miller was partial or an involved reviewer.

The results of the administrative investigation into Johnson's absence from the December 23, 2009 meeting provided the second basis for the NIR, and specifically the findings that she provided inaccurate and incomplete information in requesting time off and subsequently during the investigation. Johnson contends this was a pretext because the findings were wrong; she told the truth about the family emergency, and there were no inconsistencies in the story because Smythe testified at deposition he never told anyone she was flying to Atlanta. Despite Smythe's deposition testimony, the evidence collected by Peinado was, indeed, conflicting. His report of the investigation indicates Smythe told him Johnson said she would fly to Atlanta. Other witnesses reported that Smythe said Johnson was flying. Johnson insisted she did not fly but drove and had no receipts to corroborate this. These inconsistencies caused Peinado, who personally interviewed the witnesses, to conclude Johnson was not entirely forthcoming. While one

16

might disagree with Peinado's conclusion or believe he was wrong, his conclusion was not so implausible, incoherent, or contradictory as to lack credibility. "''"[A]n employer's judgment or course of action may seem poor or erroneous to outsiders, [but] the relevant question is . . . whether the given reason was a pretext for illegal discrimination"''" or other illegal conduct. (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344.) Furthermore, even if his conclusion did lack credibility, the performance issues provided an independent, legitimate basis for Johnson's demotion, which Johnson did not show was pretextual.

In sum, the trial court did not err in concluding there were no triable issues of fact on the disability discrimination claim. The County proffered ample evidence of legitimate, nondiscriminatory reasons for demoting Johnson, and she did not refute this evidence.

## 2. *Retaliation Cause of Action*

The trial court granted the County's motion on the retaliation cause of action because the complaint cited section 12653, a section of the False Claims Act, and Johnson did not assert facts supporting a violation of the False Claims Act. We do not agree completely with the reasoning, but ultimately, the result was not erroneous. The County was entitled to judgment on this cause of action for another reason.

### A. *Citation to the False Claims Act in the Complaint*

Even though the complaint cited section 12653, we think it abundantly clear from a fair and common sense reading of the complaint that the cause of action for retaliation fell under FEHA.

Below, the County's sole argument on the retaliation cause of action was that the False Claims Act targets those who present false claims for payment or approval to the government, and because Johnson did not complain about such fraud against the government, she could not establish an essential element of the cause of action. The argument relied entirely on the citation to the False Claims Act in the complaint. Yet the County's motion expressly acknowledged that Johnson based her retaliation cause of action "on the fact that she 'refused to participate in the on-going discrimination against

17

Probation Department personnel that had work injuries and were working in modified duties, or off work under the care of a physician.'"

"The pleadings play a key role in a summary judgment motion." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) They delimit the scope of the issues and set the boundaries of materiality in summary judgment proceedings. (*Ibid.*) Thus, a defendant moving for summary judgment must refute the theories alleged in the complaint, but not some theoretical possibility not included in the pleadings. (*Ibid.*) We should liberally construe the complaint with a view to attaining substantial justice between the parties. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118.)

Retaliation under FEHA was an issue fairly framed by the complaint. The complaint is sprinkled with references to alleged "retaliation" for objecting to the County's practices with respect to disabled workers and allegations that Johnson complained of disability discrimination against Probation employees. The complaint clearly invokes the relevant section of FEHA, section 12940 (albeit not the precise subdivision), in the general recitals preceding the statement of the causes of action, and in the causes of action other than retaliation. If the County needed any clarification—which it did not—discovery certainly provided it. The County propounded interrogatories relating to the alleged retaliation, and Johnson's responses plainly indicated she was asserting retaliation prohibited by FEHA, not retaliation prohibited by the False Claims Act. The County asked her to state all actions she initiated that resulted in retaliation; she responded that she "refused to cooperate in the disability discrimination against injured Probation Department employees."

Retaliation under FEHA was not merely some theoretical possibility left out of the complaint. On the contrary, the facts alleged in the complaint provided a more than sufficient basis for such a theory, even if the complaint mistakenly cited the False Claims Act. (See *American Airlines, Inc. v. County of San Mateo, supra*, 12 Cal.4th at p. 1131 [noting we should determine whether the facts alleged provide the basis for a cause of

18

action under *any* theory].) The County could not willfully close its eyes to the allegations and pretend they did not exist.

## B. *Retaliation Under FEHA*

Though the County did not discuss the substance of a FEHA retaliation cause of action in its motion, and the trial court did not reach the substance, we consider it. "We may affirm the summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court." (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406.) As we discuss in the following paragraphs, the pivotal issue on the retaliation cause of action is also the County's evidence of legitimate, nondiscriminatory reasons for its adverse employment action. Below, the parties had an adequate opportunity to address this issue and the issue of pretext in connection with disability discrimination. The reasons that warranted summarily adjudicating the discrimination cause of action also warrant summarily adjudicating the retaliation cause of action.

FEHA makes it unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (§ 12940, subd. (h).) To establish a prima facie case of retaliation under FEHA, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).) The employee's burden of establishing a prima facie case is fairly minimal. (*Arteaga v. Brink's, Inc., supra*, 163 Cal.App.4th at p. 353.)

Just like a discrimination case, once an employee establishes a prima facie case of retaliation, the employer may obtain summary judgment by offering legitimate, nonretaliatory reasons for the adverse employment action. (*Yanowitz, supra*, 36 Cal.4th at p. 1042.) And again, if the employer does so, the presumption of retaliation disappears, and the burden shifts back to the employee to show the legitimate reasons for

19

the employer's action were untrue or pretextual, or to show other evidence of retaliatory motive. (*Ibid.*; *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1109.)

Johnson presented prima facie evidence of protected activity. Opposing practices forbidden by FEHA constitutes protected activity, and specifically, "[o]pposing employment practices that an individual reasonably believes to exist and believes to be a violation of [FEHA]." (Cal. Code Regs., tit. 2, § 11021, subd. (a)(1)(C).) FEHA need not actually prohibit the complained-of conduct, so long as the employee reasonably believed the conduct was discriminatory. (*Yanowitz, supra*, 36 Cal.4th at p. 1043.) Johnson's evidence indicated she opposed a plan for return-to-work cases that meant the County either returned disabled Probation employees to their positions "at their full capacity," demoted them, or terminated them. Johnson objected that the process could not be so simplified. She reasonably believed the plan violated FEHA. To the extent the plan as presented to her did not provide for (1) reasonable accommodations in existing positions, or (2) an interactive process to determine whether employees could return to their positions with such accommodations, as opposed to "at their full capacity," the plan arguably violated FEHA. FEHA prohibits an employer from failing to make reasonable accommodations for known disabilities of employees and from failing to engage in a timely, good faith, interactive process with employees to determine whether reasonable accommodations are available. (§ 12940, subds. (m), (n).)

Johnson also presented prima facie evidence of an adverse employment action— her demotion. Ultimate employment acts such as refusing to hire, terminating, demoting, or failing to promote are classic examples of adverse employment actions. (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th 317, 355; *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1380.)

Further, Johnson presented prima facie evidence of a causal link between her protected activity and the adverse employment action. Temporal proximity between an employee's protected activity and a subsequent adverse action may satisfy the prima facie causation requirement. (*Arteaga v. Brink's, Inc., supra*, 163 Cal.App.4th at p. 353.)

20

Here, Johnson objected to the supervisor's plan for return-to-work cases at the December 22, 2009 meeting. A little over two weeks later, the administrative investigation commenced, and sometime in the first three months of 2010, the Department of Human Resources presented Remington with the documentation and information on Johnson's performance. This proximity between Johnson's protected activity and the process that set in motion her demotion was prima facie evidence of causation.

Still, as we discuss above, the County rebutted the presumption that arises from a prima facie case with legitimate, nondiscriminatory reasons for Johnson's demotion, and Johnson did not refute this evidence as pretextual or otherwise show retaliatory motives. Hence, the County was entitled to judgment on this cause of action as well.

### 3. *Harassment Cause of Action*

Lastly, we conclude the court did not err in granting the County's motion on the harassment cause of action. FEHA prohibits an employer from harassing an employee because of a physical or mental disability, among other protected classes. (§ 12940, subd. (j)(1).) Johnson brought suit under section 12940, subdivision (k), which provides for liability when the employer fails to take reasonable steps to prevent harassment. To prevail on a cause of action for failure to prevent harassment, the plaintiff must show actual harassment occurred. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289.)

For conduct to constitute actionable harassment, it must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive working environment. (*Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 446, disapproved on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6.) "'In determining what constitutes "sufficiently pervasive" harassment, the courts have held that acts of harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature.'" (*Muller*, at p. 446.)

21

"'[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job.'" (*Reno v. Baird* (1998) 18 Cal.4th 640, 645-646.) "[T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 64-65.)

The regulations implementing FEHA define harassment as including verbal harassment, such as epithets, derogatory comments, or slurs; physical harassment, such as assault, impeding or blocking movement, or any physical interference with normal work or movement; visual forms of harassment, such as derogatory posters, cartoons, or drawings; and sexual harassment, such as conditioning an employment benefit on an exchange of sexual favors. (Cal. Code Regs., tit. 2, § 11019, subd. (b).) "Thus, harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.)

Here, no material factual dispute exists as to harassment. The administrative investigation, poor performance review, and demotion of which Johnson complains were the type of necessary personnel management decisions that do not fall within the meaning of harassment. Instead, FEHA addresses these types of official employer actions as "*explicit* changes in the 'terms, conditions, or privileges of employment'" under the discrimination subdivision. (*Roby v. McKesson Corp., supra*, 47 Cal.4th at p. 706.)

Moreover, even if these actions constituted harassing conduct, Johnson still had to show the pertinent individuals harassed her *because* she belonged to a protected class.

22

Again, the County proffered ample evidence that it based the March 2010 performance review and the NIR on legitimate, nondiscriminatory reasons. The County's evidence also showed it commenced the administrative investigation for legitimate reasons—Johnson missed a high-priority meeting, and there was some reason to suspect she was not truthful because she had a vacation scheduled in close temporal proximity.

Johnson contends she was also subjected to harassing conduct when Supervisor Molina threw return-to-work files to the floor and ordered her and Smythe to clean them up. The record contains no evidence of such an incident. Instead, Johnson attaches exhibits to her appellate brief describing such an incident (a page from Smythe's deposition and a memorandum she wrote in January 2010). This material is not properly before us. On appeal from summary judgment, we confine our review to the record the trial court had before it. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717; *Wiler v. Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 627.) We may not consider evidence the trial court did not have when it ruled on the motion. (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4.)

## DISPOSITION

The trial court did not err in granting summary judgment. The judgment is affirmed. In the interest of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.



GRIMES, J.

23