Filed 6/1/15  Sapronetti v. County of San Bernardino CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATRICK J. SAPRONETTI, | |
| Plaintiff and Appellant, | G050723 |
| v. | (Super. Ct. No. CIVDS1105688) |
| COUNTY OF SAN BERNARDINO, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Bryan Foster, Judge.  Reversed and remanded with directions.

Law Offices of Sandra L. Noël and Sandra L. Noël for Plaintiff and Appellant.

Wade & Lowe, Edwin B. Brown, Richard W. Miller and Geoffrey T. Hill for Defendant and Respondent.

\*          \*          \*

INTRODUCTION

Patrick J. Sapronetti appeals from the judgment entered after the trial court sustained, without leave to amend, the demurrer filed by his former employer, the County of San Bernardino (the County), to his third amended complaint. The third amended complaint asserted a single claim for retaliation in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). The trial court concluded Sapronetti failed to timely file his retaliation claim.

Although the trial court properly sustained the County's demurrer to the third amended complaint, we reverse the judgment and remand with directions. Sapronetti's retaliation claim was primarily based on acts that occurred more than a year before he presented his retaliation claim to the California Department of Fair Employment and Housing (DFEH) and filed his original complaint. Those acts included the County's decision in April 2009 to transfer Sapronetti from the adult supervision unit to the juvenile investigation unit. Because he failed to present his retaliation claim to the DFEH within a year of the alleged retaliatory conduct, the claim was time-barred to the extent it is based on those acts. (Gov. Code, § 12960, subd. (d).)

Sapronetti argues his retaliation claim was not time-barred because he alleged continuing retaliation since April 2009 in the form of the County's repeated denials of his requests to reassign him back to the adult supervision unit. The continuing violation doctrine did not apply here to indefinitely toll the applicable statute of limitations for as long as Sapronetti continued to unsuccessfully request reassignment. The pleaded facts show the County unequivocally denied his request in April 2009 and that decision had acquired permanence. Allegations of the County's subsequent refusals to change its decision, therefore, do not save the retaliation claim from being time-barred.

Sapronetti further argues that his retaliation claim is timely because he alleged he was suspended in August 2012. The continuing violation doctrine does not

2

operate to extend the statute of limitations to the August 2012 suspension because the suspension was both unique in form and remote in time, in relation to other instances of alleged retaliation. It therefore did not constitute an instance of continuing retaliation within the meaning of the continuing violation doctrine. Furthermore, although not argued by Sapronetti, were we to view the retaliation claim as based solely on the August 2012 suspension, his claim would not survive demurrer because it failed to allege sufficient facts regarding the circumstances of the suspension and its causal connection to his engaging in protected activity.

Although the trial court properly sustained the demurrer, we reverse the judgment and remand with directions that the trial court grant Sapronetti leave to file an amended pleading or a supplemental complaint. Our review of the appellate briefs and counsel's presentation at oral argument show it is reasonably possible for Sapronetti to file an amended pleading or a supplemental complaint that states a retaliation claim based solely on the August 2012 suspension. We therefore afford Sapronetti that opportunity.

### SUMMARY OF THE ALLEGATIONS OF THE THIRD AMENDED COMPLAINT AND CHRONOLOGY

In reviewing the order sustaining the demurrer, we accept the factual allegations of the third amended complaint as true, and also accept as true facts appearing in exhibits attached to the complaint. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 55-56.)

In February 1998, the County hired Sapronetti as a probation corrections officer; he exceeded expectations in his performance of his duties and responsibilities in that position. In March 2007, he was promoted to the position of probations officer II. He performed well and quickly advanced to an "enhanced armed field assignment."

In December 2008, while assigned to the "Central Adult Enhanced Supervision Unit," Sapronetti complained to his supervisor, Robert Wyatt, that some of

3

his colleagues (officers and a clerk) were engaging in "inappropriate, offensive, unethical, unprofessional and illegal behavior in the workplace, including conduct that rose to the level of misconduct, health and safety violations, and breaches of confidentialit[y]." Specifically, he complained that (1) on two occasions in the August-September 2008 timeframe, he observed a coemployee's 17-year-old daughter inputting confidential information into a probationer's case file; (2) in October 2008, a probation officer in his unit brought her two children to work where they filed legal documents and were watched by another employee for six hours during worktime; (3) on at least five occasions, two probation officers (Brady Lock and Jarod Linell) "join[ed] in the horseplay" with an employee's child; (4) probation officers placed intake photographs of criminal defendants with unusual physical attributes on the counter to be gawked at by other officers; (5) on a daily basis, Lock and Linell banged on walls, partitions, windows, and cubicles; shot rubberbands at coworkers; and deployed their batons in an unsafe manner while others were nearby; and (6) during the Christmas season, Lock and Linell removed trash from one of the receptacles and stuffed the trash into Christmas stockings. Wyatt "threatened" Sapronetti to get along with the other officers or he would be transferred out of the unit.

In January 2009, Sapronetti found out that Linell had taken a photograph of Sapronetti's official county identification badge picture, put the picture of Sapronetti's face on a picture of an overweight movie character ("Paul Blart Mall Cop"), and placed it on the break room bulletin board. Sapronetti alleged the altered photograph depicted him as an "old overweight and goofy officer." Sapronetti complained that Linell had rifled through his personal belongings in his desk to obtain the identification badge and had used the County's Internet connection to obtain the picture from the movie. Linell made an effort to point the picture out to others and to poke fun at it. Wyatt saw it and laughed. He did not order that the picture be taken down; it remained posted there for a month.

4

Sapronetti told Wyatt that because of the complaints he had made about the inappropriate behavior in the workplace, he had reservations about going out in the field to perform law enforcement duties with other probation officers.

On January 28, 2009, Wyatt told Sapronetti that he would be transferred from the adult supervision unit as a field officer to another unit due to budgetary concerns. Wyatt also told Sapronetti that two caseload positions were being eliminated.

Sapronetti was worried his involuntary transfer would result in his becoming a 90-day probationary employee. He met with the deputy director, Dan Bautista, and expressed his desire not to be transferred; Bautista said he would reverse the transfer. On February 4, 2009, however, Bautista informed Sapronetti that he would be transferred to the juvenile investigation unit, effective April 27, 2009.

In early April 2009, during a meeting with the chief probation officer, Sapronetti expressed his concerns about his coworkers' behavior and going out in the field with them in dangerous situations. He also requested that he be returned to the assignment in the adult supervision unit.

In April 2009, Sapronetti was transferred to the juvenile investigation unit, which he considered a "substandard and inferior position" that required him to relinquish his weapon and work at a desk; he considered it a demotion. Wyatt immediately replaced Sapronetti with a less senior probationary employee who was in his late 20's and of average weight. Sapronetti's replacement had no training that qualified him to do field compliance checks or participate in law enforcement sweeps.

On April 28, 2009, Sapronetti began a medical leave of absence during which he communicated with, inter alia, a judge, the County's human resources department, and the County's board of supervisors, about his complaints.

On December 30, 2009, Sapronetti filed a charge of discrimination with the DFEH, claiming discrimination and harassment based on his age and physical disability (the 2009 DFEH Charge). He claimed the wrongful conduct occurred from January 2009

5

through April 2009; he did not check the box stating that the wrongful conduct constituted a "continuing action."

In the 2009 DFEH Charge, Sapronetti described the "particulars" of his charge as follows: "On or about 1/7/09, I was subjected to a hostile working environment which included, but is not limited to: having an altered picture of my face put on top of an overweight movie character. I reported the harassment, among other things, to Mr. Wyatt on or about 2/17/09. On or about 3/16/09, I was re-assigned from Field Supervision to Juvenile Investigation." He also stated that "[n]o reason was provided for the hostile working environment. Mr. Wyatt stated that my position at Field Supervision was being cut due to budgetary issues." Sapronetti stated he was "subject to a hostile working environment and re-assigned due to age (44) and being perceived as disabled."

Sapronetti received a "right-to-sue" notice from the DFEH, dated January 8, 2010. The notice informed him that he must bring a lawsuit in state court within one year from the date of the notice.

Sapronetti returned to work from his medical leave of absence in August 2010. In September 2010, he filed a claim under the Government Claims Act (Gov. Code, § 900 et seq.); the County served the notice of its rejection of Sapronetti's claim in November 2010. (Although not alleged in the third amended complaint, Sapronetti filed the instant lawsuit against the County on May 2, 2011.)

On May 9, 2011, Sapronetti filed a second charge of discrimination with the DFEH, in which he alleged that as most recently as May 2, 2011, he had been demoted, harassed, denied transfer, and retaliated against for reporting harassment and because of his age. Sapronetti stated he "was demoted and transferred out of unit based on budgetary concerns." Sapronetti stated he had made numerous attempts to transfer back into the unit, which had been refused based on budgetary concerns, a reason he believed to be pretextual "as another employee was given his position." In a letter dated May 10, 2011, Sapronetti was informed of his right to sue within one year.

6

In December 2011, supervising probation officer Dennis Williams informed Sapronetti that an "administrative investigation interrogation" had been scheduled for December 21, 2011, concerning an allegation that Sapronetti had been discourteous on October 7, 2011, when he had asked a minor in the presence of his mother: "Does your mom have a love meeting to get to?"

On July 27, 2012, the County served Sapronetti with a notice of proposed disciplinary action in the form of a three-day suspension without pay because of allegations that he had discourteously treated the public or other employees; willfully or negligently disobeyed the law; and engaged in conduct, which discredited the County, department, or agency, or which was incompatible with the due and faithful discharge of his duties. (The third amended complaint did not address the truth, or lack thereof, of the allegations of misconduct or the merit of the proposed suspension.)

On August 23, 2012, the County served Sapronetti with an order of suspension sustaining the notice of proposed disciplinary action.

On August 29, 2012, Sapronetti filed a third charge of discrimination with the DFEH, alleging that as recently as August 23, 2012, he was discriminated against, harassed, and retaliated against. In the charge itself, he stated, "I believe that the Order of Suspension sustaining the Notice of Proposed Disciplinary Action, as well as the refusal to reverse my transfer/demotion, was retaliatory, harassment, pretextual and motivated by my efforts to complain and report ongoing discrimination, retaliation and harassment."

PROCEDURAL HISTORY

In May 2011, Sapronetti filed a complaint against the County, containing claims for "retaliation in violation of public policy re reporting unsafe working conditions" (capitalization omitted), retaliation for reporting harassment/hostile work environment harassment, and intentional infliction of emotional distress. The County

7

demurred to the complaint on the ground each claim failed to state a cause of action.  Our record does not show the trial court ruled on the demurrer to the original complaint.

In December 2011, Sapronetti filed a first amended complaint against the County, asserting the same claims.  The County demurred to all the causes of action contained in the first amended complaint because they were time-barred.  The trial court sustained the demurrer without leave to amend as to the first cause of action for retaliation in violation of public policy, and sustained the demurrer with leave to amend as to both the retaliation in violation of the FEHA claim and the intentional infliction of emotional distress claim.

In April 2012, Sapronetti filed a second amended complaint containing claims for "retaliation for reporting harassment/hostile work environment harassment" (capitalization omitted) and intentional infliction of emotional distress.  The County demurred, and the trial court sustained the demurrer as to the retaliation claim with leave to amend and the demurrer as to the intentional infliction of emotional distress claim without leave to amend.

On August 31, 2012, Sapronetti filed the third amended complaint containing a single claim of "retaliation for complaining and reporting harassment and filing complaint for perceived and actual discrimination." (Capitalization omitted.)  All three charges of discrimination, which Sapronetti filed with the DFEH, were attached to the third amended complaint and incorporated therein.  The County filed a demurrer to the third amended complaint on the ground Sapronetti's single claim for retaliation was time-barred.

The transcript of the hearing on the demurrer states in relevant part:

"The Court:  . . . Tentative is to grant the demurrer without leave.  Basis for this is that it appears to me it's barred by the statute of limitations; the adverse action [occurred] in March of 2009.  There was an appropriate complaint filed [i]n December of 2009.  The actual complaint in this matter was filed on May 2nd, 2011.  There's a

8

one-year statute of limitations.  I don't see it as a continuing violation.  I know that was the argument in the opposing papers, but it appears to me that the continuing violation is basically saying they didn't reinstate me.  I asked again and they didn't reinstate me.  [¶] It appears to me the damage occurred at the time of the discharge.  If you believe that's the basis for it and that's all—all of these requests to be reinstated relate back to that and it appears that's the operative date.  Based on the filing of the complaint the department—what is it?

"[The County's counsel]:  DFEH.

"The Court:  The filing at that point I think is the period in which it indicates that a—the actions were recognized by the plaintiff at that time to be final and that there was no chance of reconciliation in terms of respective rights.  And as such statute of limitations have to run from that point."

The court also stated:  "I think if he was terminated that would give rise to a new action, not a continuation of this action.  Based upon that I'm going to confirm the tentative and grant the demurrer without leave.  It doesn't appear to me you can get around the statute of limitations."

The trial court sustained the demurrer to the third amended complaint without leave to amend.  Counsel for Sapronetti did not ask for leave to amend. Judgment was entered in favor of the County.  Sapronetti appealed.


DISCUSSION

I.

STANDARD OF REVIEW

A judgment following the sustaining of a demurrer is reviewed under the de novo standard.  (*McCutchen v. City of Montclair* (1999) 73 Cal.App.4th 1138, 1144; *Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1803-1804.) Accordingly, we treat the properly pleaded allegations of a challenged complaint as true,

9

and liberally construe them to achieve "'"'substantial justice'"'" among the parties. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118.)

We consider only the allegations of a challenged complaint and matters subject to judicial notice to determine whether the facts alleged state a cause of action under any theory. (*American Airlines, Inc. v. County of San Mateo*, *supra*, 12 Cal.4th at p. 1118.) "'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)


II.

THE TRIAL COURT PROPERLY SUSTAINED THE DEMURRER TO THE
THIRD AMENDED COMPLAINT BECAUSE IT WAS TIME-BARRED.

Sapronetti contends the trial court erred by sustaining the County's demurrer to the third amended complaint asserting a single cause of action for retaliation in violation of the FEHA. For the reasons we will explain, we find no error because Sapronetti's retaliation claim is time-barred; the continuing violation doctrine does not apply.

It is an "unlawful employment practice" under the FEHA for "any employer . . . or person to . . . discriminate against any person because the person has opposed any practices forbidden under this part or . . . has filed a complaint, testified, or assisted in any proceeding under this part." (Gov. Code, § 12940, subd. (h); see Cal. Code Regs., tit. 2, § 11021, subd. (a).) "Employees may establish a prima facie case of unlawful retaliation by showing that (1) they engaged in activities protected by the FEHA, (2) their employers subsequently took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse employment action." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 472.)

10

An employee who believes he or she has suffered an unlawful employment practice under the FEHA may file a complaint with the DFEH within a one-year period. (Gov. Code, § 12960.) The DFEH must then investigate the claim (*id.*, § 12963), and has 150 days to issue either an accusation for hearing (*id.*, § 12965, subds. (a), (b)), or a "right-to-sue notice" (*id.*, § 12965, subd. (b)). (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1082.) Employees who receive a "'right to sue'" letter from the DFEH may then pursue their statutory causes of action in superior court. (*Ibid.*) "They have one year from the date the letter is issued to do so. ([Gov. Code, ]§ 12965, subd. (b).)" (*Ibid.*)

The first time Sapronetti raised his retaliation claim in violation of the FEHA was in the original complaint that he filed in this action on May 2, 2011. The complaint alleged he was retaliated against for complaining in early 2009 to his superiors about harassing and retaliatory conduct. The complaint alleged the retaliation consisted of his complaints going unaddressed, and his being transferred out of the adult supervision unit and into the juvenile investigation unit, over his repeated objections.[1]

At the time of filing the complaint, however, Sapronetti had not asserted a retaliation claim in a DFEH charge (the 2009 DFEH Charge that he had submitted in December 2009 only asserted a claim for discrimination and harassment). Therefore, Sapronetti had not exhausted his administrative remedies as to his retaliation claim before filing his lawsuit. Even if we were to read the 2009 DFEH Charge as including a retaliation claim, the complaint was filed in May 2011, and, thus, over a year after the DFEH issued Sapronetti a right-to-sue letter (dated January 8, 2010) as to the 2009 DFEH Charge. (See Gov. Code, § 12965, subd. (b) [requiring that a civil suit be filed

_____

[1] Although the third amended complaint alleged that Sapronetti "was placed" on a medical leave of absence, beginning April 28, 2009, which continued until August 2010, the pleading did not allege facts showing the leave was compulsory or that he considered his leave to be retaliatory; Sapronetti has not argued otherwise in the trial court or in this appeal.

11

within one year of the date of the right-to-sue notice].)  Sapronetti's retaliation claim was therefore time-barred at the time the complaint was filed and the County demurred to the complaint on that basis.

Sapronetti filed a second charge of discrimination with the DFEH on May 9, 2011, which included a claim for retaliation.  In the second charge, he alleged that he had been "demoted and transferred out of [the adult supervision] unit" under the pretext the probation department was having budgetary issues when the transfer was actually in retaliation for reporting harassment and discrimination.  Sapronetti's retaliation claim on the basis he was demoted and transferred out of the adult supervision unit was presented to the DFEH too late—those acts occurred in April 2009.  Government Code section 12960, subdivision (d) requires that a claim of an unlawful practice under the FEHA be filed with the DFEH within one year of its occurrence.

In the second DFEH charge of discrimination, Sapronetti's claim for retaliation was also based on the allegation that since April 2009, he had "made numerous attempts to transfer back into the unit, all refused based on budgetary concerns," which, he believed, "[were] pretextual."  In the third amended complaint, which incorporated by reference the second DFEH charge, Sapronetti alleged the County's retaliatory acts continued beyond the date he was transferred to the juvenile investigation unit in April 2009 because, since that time, he had repeatedly requested to be transferred back to the adult supervision unit.  Sapronetti contends each denial of his request by the County constituted a continuing injury that extended the running of the statute of limitations period.  Sapronetti's argument is without merit.

The continuing violation doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802.)  In *Richards v. CH2M Hill, Inc.*, the California Supreme Court adopted a three-prong test to determine whether the continuing violation doctrine applies to

12

harassment claims: "[A]n employer's persistent failure to reasonably accommodate a disability, or to eliminate a hostile work environment targeting a disabled employee, is a continuing violation if the employer's unlawful actions are (1) sufficiently similar in kind—recognizing, as this case illustrates, that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence. [Citation.]" (*Id.* at p. 823.) In *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1059-1060, the California Supreme Court made clear that the continuing violation doctrine may apply to a claim for retaliation.

Here, although the County's consistent denials of Sapronetti's requests to be reassigned to the adult supervision unit were inherently similar in kind, the County unequivocally denied that request in April 2009. No facts were alleged showing the County's decision was in any way fluid or temporary. To the contrary, the allegations of the third amended complaint showed the County's decision had acquired permanence.

Although the third amended complaint alleged Sapronetti continued to unsuccessfully seek transfer back to the adult supervision unit for years, the County's refusal to change its decision does not constitute continuing retaliation within the meaning of the continuing violation doctrine so as to indefinitely toll the statute of limitations. The continuing violation doctrine therefore does not apply to Sapronetti's claim that he was retaliated against from the date of his transfer in April 2009 through the date of the County's most recent denial of his request for a reversal of that decision. Consequently, his retaliation claim based on those allegations is time-barred.

Sapronetti also argues the continuing violation doctrine applies to his retaliation claim because the third amended complaint alleged that, as recently as August 23, 2012, the County suspended him for three days for misconduct. The continuing violation doctrine does not apply to connect the alleged retaliatory acts in

13

April 2009 to the August 2012 suspension because the suspension is unique in form—completely unlike any other preceding retaliatory acts alleged by Sapronetti. The suspension was also remote in time, occurring about three and a half years after the County's April 2009 final decision to transfer Sapronetti to the juvenile investigation unit.

In sum, the continuing violation doctrine does not save Sapronetti's retaliation claim, as alleged in the third amended complaint, from being time-barred. The trial court did not err by sustaining the demurrer on that ground.


III.

EVEN IF WE WERE TO CONSIDER THE AUGUST 2012 SUSPENSION INCIDENT AS THE SOLE BASIS FOR SAPRONETTI'S RETALIATION CLAIM, ALTHOUGH SUCH A BASIS WOULD BE TIMELY, THE THIRD AMENDED COMPLAINT FAILED TO STATE SUFFICIENT FACTS.

A retaliation claim based solely on the August 2012 suspension would have been timely when the third amended complaint was filed in August 2012; Sapronetti identified the August 2012 suspension in his third DFEH charge of discrimination (also filed in August 2012). We, therefore, next consider whether the third amended complaint stated a claim for retaliation based solely on the August 2012 suspension, as viewed in isolation from the earlier alleged adverse employment actions that, for the reasons we discussed *ante*, are time-barred. We conclude the third amended complaint did not state such a claim because it failed to allege sufficient facts.

We begin by noting the third amended complaint never alleged, even in a conclusory fashion, that the August 2012 suspension constituted an act of retaliation in violation of the FEHA. Instead, the third amended complaint vaguely alleged that Sapronetti was retaliated against "by denying and not affording him the equal employment opportunities, benefits, terms and conditions of employment that must be afforded to all employees irrespective of protesting and asserting their fundamental

14

rights." The third amended complaint alleged, "the adverse action, demotions and transfers by the COUNTY [were] pretextual, designed to justify and build a paper trail to eventually terminate Plaintiff simply due to his perceived physical disability and/or age." It further alleged, "[p]laintiff is informed and believes that the County's refusal to reinstate Plaintiff to his former position as a Probation Officer is a direct result of his complaining about retaliation and hostile work environment harassment and their refusal to reinstate Plaintiff to his former position, a continuing violation."

Even if we were to construe the third amended complaint as relying on the August 2012 suspension as a basis for Sapronetti's retaliation claim, it did not allege any facts regarding that incident. The third amended complaint did not allege, for example, any facts related to whether Sapronetti had engaged in any misconduct that led to the suspension, or facts related to how the suspension was pretextual. It did not allege facts showing how the suspension was inappropriate or unjustified, or that it constituted disproportionately severe punishment as compared to the treatment of other employees in similar circumstances.

The third amended complaint incorporated by reference Sapronetti's third DFEH charge of discrimination, which included the following conclusory statement: "I believe that the Order of Suspension sustaining the Notice of Proposed Disciplinary Action, as well as the refusal to reverse my transfer/demotion, was retaliatory, harassment, pretextual and motivated by my efforts to complain and report ongoing discrimination, retaliation and harassment." The third DFEH charge, however, like the third amended complaint, did not contain any *facts* that showed Sapronetti's suspension was causally related to his engaging in protected activity.

The trial court therefore did not err by sustaining the demurrer because the third amended complaint failed to allege sufficient facts to state a cause of action for retaliation in violation of the FEHA.

15

IV.

## WE REVERSE THE JUDGMENT AND REMAND WITH DIRECTIONS TO THE TRIAL COURT TO GRANT LEAVE TO SAPRONETTI TO FILE AN AMENDED PLEADING OR A SUPPLEMENTAL COMPLAINT.

If the trial court sustains a demurrer without leave to amend, we must consider "whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Leave to amend is liberally granted. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1348.) "[L]eave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.) "The issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*Id.* at p. 746.)

While an amended pleading relates to matters existing when the original pleading was filed (*Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 967), a plaintiff may move to file a supplemental complaint to allege "facts material to the case occurring after the former complaint" (Code Civ. Proc., § 464, subd. (a)). "Ordinarily, leave to file supplemental pleadings is granted even more readily than amended pleadings. There is far less chance that granting leave will prejudice the opposing parties, or delay the trial, because of the new rule that supplemental pleadings cannot allege 'new' causes of action or defenses." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 6:819, p. 6-202 (rev. # 1, 2006).)

Here, Sapronetti did not request leave to amend or file a supplemental complaint in the trial court. Nevertheless, Sapronetti's appellate briefs, combined with his attorney's comments at oral argument, strongly suggest the existence of as yet unpleaded facts that might support a retaliation claim solely based on the August 2012 suspension. As it appears to us reasonably possible that Sapronetti could amend his third amended complaint or file a supplemental complaint that states a valid cause of action for

16

retaliation based solely on the August 2012 suspension, we reverse the judgment and remand with directions that the trial court grant leave to Sapronetti to amend the third amended complaint or file a supplemental complaint. We emphasize that any proposed pleading by Sapronetti may not be based on a continuing violation doctrine. We express no opinion as to whether Sapronetti's amended or supplemental complaint will also be subject to demurrer or other motion.[2]

## DISPOSITION

Although the trial court properly sustained the demurrer to the third amended complaint, the judgment is reversed and the matter is remanded with directions that the trial court grant leave to Sapronetti to file an amended pleading or a supplemental complaint consistent with the views and limitations expressed in this opinion. In the interests of justice, all parties shall bear their own costs on appeal.

FYBEL, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

MOORE, J.

---

[2] At oral argument, counsel for both parties referred to a separate lawsuit involving the same parties and suggested it was based on similar facts and circumstances as involved in this case. Neither the existence nor the substance of any such action is part of our record.